

## Fourth Court of Appeals
### San Antonio, Texas

**MEMORANDUM OPINION**

No. 04-14-00788-CV

**IN THE INTEREST OF J.R.** and T.R., Children

From the 407th Judicial District Court, Bexar County, Texas
Trial Court No. 2014-PA-00015
Honorable Charles E. Montemayor, Judge Presiding

Opinion by:    Marialyn Barnard, Justice

Sitting:    Sandee Bryan Marion, Chief Justice
Marialyn Barnard, Justice
Luz Elena D. Chapa, Justice

Delivered and Filed:  May 6, 2015

AFFIRMED

Appellant father ("Father") and appellant mother ("Mother") separately appeal the trial

court's order terminating their parental rights to their children, J.R. and T.R.  On appeal, neither

Father nor Mother challenge the sufficiency of the evidence to support the trial court's findings

under section 161.001(1) of the Texas Family Code.  Rather, Father raises a single issue contending

his trial counsel was ineffective, and Mother raises a single issue contending the evidence is legally

and factually insufficient to support the trial court's finding that termination was in the best

interests of their children.  We affirm the trial court's order of termination.

### BACKGROUND

On January 6, 2014, the Texas Department of Family and Protective Services ("the

Department") filed its original petition in this case.  At the time the petition was filed, the

Department sought, and was granted, an emergency protective order allowing the Department to take custody of three-year-old J.R. and his two-year-old sister, T.R., who were in the care of their maternal aunt, G.G. Molly Hobbs, the Department case worker, testified the Department sought to remove the children from their maternal aunt because in January 2014, she gave birth to a child who tested positive for methamphetamines. According to Ms. Hobbs, the children were being cared for by G.G. because Father and Mother were both incarcerated for alleged federal drug offenses.

On the same date the petition was filed and the children were removed, the trial court appointed an attorney ad litem for Father and an attorney ad litem for Mother. Service plans were created for Father and Mother. According to the record, Father and Mother were served by certified mail. Initially, the Department's goal was reunification, but the goal ultimately changed to termination due to lack of cooperation by the parents. As required, the Department submitted status reports to the trial court and hearings were held based on those reports. Father did not appear at any of the status hearings; however, his attorney appeared at each hearing and announced "not ready." The trial court overruled the "not ready" announcements.

The evidence shows both Father and Mother were remiss with regard to completion of their service plans. Although Mother attempted to complete some services, Father had not completed any portion of his service plan as of the date of trial.

Ultimately, a termination hearing was held before the trial court. After the hearing, the trial court ordered Father's parental rights terminated, finding he constructively abandoned the children and failed to comply with the provisions of a court order that established the actions necessary to obtain the return of the children. *See* TEX. FAM. CODE ANN. §§ 161.001(1)(N), (O) (West 2014). The trial court also ordered Mother's parental rights terminated, finding she too constructively abandoned the children and failed to comply with the provisions of a court order

that established the actions necessary to obtain the return of the children. *See id.* The trial court also found termination of Father's and Mother's parental rights would be in the best interests of the children. *See id.* § 161.001(2). Thereafter, Father and Mother each perfected an appeal.

## ANALYSIS

Father and Mother each raise a single issue on appeal. Father contends he received ineffective assistance of counsel at trial. Mother contends the evidence is legally and factually insufficient to support the trial court's finding that termination was in J.R.'s and T.R.'s best interests. Again, neither parent challenges the evidence with regard to the trial court's findings under section 161.001(1).

Under the Texas Family Code ("the Code"), a court may terminate a parent's rights to a child only upon proof by clear and convincing evidence that the parent committed an act prohibited by section 161.001(1) of the Code, and that termination is in the best interest of the child. *Id.* § 161.001(1), (2); *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009); *In re E.A.G.*, 373 S.W.3d 129, 140 (Tex. App.—San Antonio 2012, pet. denied). The Code defines "clear and convincing evidence" as "proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West 2008); *see J.O.A.*, 283 S.W.3d at 344; *E.A.G.*, 373 S.W.3d at 140. This heightened standard of review is required because termination of a parent's rights to a child implicates due process in that it results in permanent and unalterable changes for the parent and the child. *E.A.G.*, 373 S.W.3d at 140. "[T]he appellate standard for reviewing termination findings is whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations." *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002).

### *Father — Ineffective Assistance of Counsel*

Father contends he was denied effective assistance of counsel. "In Texas, there is a statutory right to counsel for indigent persons in parental-rights termination cases." *In re M.S.*, 115 S.W.3d 534, 544 (Tex. 2003); *see* TEX. FAM. CODE ANN. § 107.013(a)(1). The Texas Supreme Court held this right to counsel means a right to effective counsel. *M.S.*, 115 S.W.3d at 544.

### *Standard of Review*

With regard to appellate review of ineffective assistance of counsel claims in parental termination cases, the supreme court adopted the standard applied in *Strickland v. Washington*, 466 U.S. 668 (1984), which is used to review such claims in criminal cases. *Id.* at 545. Under the *Strickland* standard, an appellant must show by a preponderance of the evidence that: (1) counsel's performance was deficient, i.e., that it fell below the objective standard of prevailing professional norms; and (2) there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687; *J.O.A.*, 283 S.W.3d at 342; *M.S.*, 115 S.W.3d at 545. In other words, the deficient performance must be "so serious as to deprive the defendant of a fair trial." *Strickland*, 466 U.S. at 687.

### *Application*

In this case, Father contends his trial counsel's performance was deficient because his appointed counsel failed to: (1) appear at the termination hearing; (2) secure Father's participation at the hearing — telephonically or otherwise, and (3) file and argue a motion for new trial. Father makes the first assertion despite the fact that substitute counsel appeared on his behalf at the termination hearing.

We need not decide whether these acts rendered appointed counsel's performance deficient in this case because Father must still prove that but for counsel's performance, the outcome of the termination proceeding would have been different and Father has not sustained his burden in this

respect.  *See Strickland*, 466 U.S. at 687; *J.O.A.*, 283 S.W.3d at 344; *M.S.*, 115 S.W.3d at 549–50. Father seems to argue he was not required to establish *Strickland's* second prong because his appointed counsel did not appear at the termination hearing.  However, as we explain below, Father must still prove by a preponderance of the evidence that but for trial counsel's deficient performance, the result of the proceeding would have been different because Father was not without counsel at the termination hearing.  Rather, Father was represented by substitute counsel at the hearing and substitute counsel acted affirmatively to test the Department's case.  *Compare Strickland*, 466 U.S. at 687 *with Cronic*, 466 U.S. at 658–59.

We recognize that the right to effective assistance of counsel exists not for its own sake, but because of its effect on the ability of the accused — or in termination cases, the parent — to receive a fair trial.  *See U.S. v. Cronic*, 466 U.S. 648, 658 (1984).  Generally, absent proof that counsel's conduct rendered the trial process unreliable or unfair, i.e., prejudices the parent, a claim of ineffective assistance of counsel fails.  *See id.*  There are, however, circumstances that are so likely to prejudice an accused or a parent that proof of prejudice, i.e., proof of a different outcome, is unnecessary.  *See id.*  The Supreme Court has identified three situations in which prejudice is so likely that it need not be proved: (1) counsel is absent during a critical stage of the proceedings; (2) counsel utterly fails to subject the adversary's case to meaningful testing; and (3) trial circumstances were such that although counsel was present and available during trial, the likelihood that any lawyer, even a competent one, could prove effective assistance is small.  *Bell v. Cone*, 535 U.S. 685, 695–96 (2002) (quoting *Cronic*, 466 U.S. at 658–59).

In this case, Father, without citing *Cronic* or its progeny, seemingly relies upon circumstance one, and perhaps two, in support of his claim that he need not establish prejudice due to ineffective assistance of counsel.  *See id.*  Admittedly, Father's appointed counsel did not appear at the hearing.  The record does not explain appointed counsel's absence, but it suggests appointed

counsel knew — as did the court — that he would be unable to appear, and therefore, obtained substitute counsel for purposes of the hearing. The substitute attorney appeared and announced "not ready," asserting Father was not present and had no prior contact with appointed counsel. However, after reurging his prior "not ready" objection, the substitute attorney proceeded to cross-examine the Department case worker, who was the State's first, and main, witness. The substitute attorney asked Ms. Hobbs several questions, including: (1) whether Father was the legal or alleged father of the children — alleged; (2) whether the Department sent Father a service plan — it did; (3) whether the Department received correspondence from Father — it did, a letter; and (4) what was the gist of the letter sent by Father — he desired that Mother's rights not be terminated, but expressed no opinion as to his own desires. Admittedly, the substitute attorney did not call any witnesses.

Based on the foregoing, we hold Father's contention — that he was unrepresented by counsel or that there was an utter failure by counsel to test the Department's case, thereby negating his need to establish the second *Strickland* prong of prejudice — is incorrect. The difference between the *Strickland* and *Cronic* standards are differences not of degree, but of kind. *Bell*, 535 U.S. at 697; *compare Strickland*, 466 U.S. at 687 *with Cronic*, 466 U.S. at 658–59. In other words, the standards distinguish between an absence of representation and substandard representation. *See Bell*, 535 U.S. at 697; *compare Strickland*, 466 U.S. at 687 *with Cronic*, 466 U.S. at 658–59. The Fifth Circuit has held, when applying *Cronic*, that "bad lawyering, regardless of *how* bad, does not support the presumption" of prejudice. *McInerney v. Puckett*, 919 F.2d 350, 353 (5th Cir. 1990) (emphasis in the original). In other words, bad lawyering alone does not mandate an application of *Cronic*. *See id.* Accordingly, we presume counsel's performance was so deficient as to negate the need to establish prejudice only when the parent or the defendant can prove counsel was truly absent — in body or by deed — not merely incompetent. *See id.*

As set out above, that is not the case here. Father was represented by substitute counsel at the hearing and substitute counsel cross-examined the State's main witness. We therefore decline to apply the *Cronic* standard, and will apply the *Strickland* standard. Assuming Father met his burden on the first *Strickland* prong, we hold that as to the second prong, Father fails to argue or prove that but for appointed counsel's alleged deficiencies the outcome would have been different, i.e., that his parental rights would not have been terminated. Thus, because Father failed to meet his burden under the second prong of *Strickland*, we overrule his sole appellate issue.

### *Mother — Best Interests*

Mother contends the evidence is legally and factually insufficient to support the trial court's finding that termination of her parental rights was in her children's best interests. With regard to legal sufficiency challenges in termination cases, we view the evidence in the light most favorable to the trial court's finding and judgment, and any disputed facts are resolved in favor of that court's findings, if a reasonable fact finder could have so resolved them. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (citing *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)). We are required to disregard all evidence that a reasonable fact finder could have disbelieved, and we must consider undisputed evidence even if such evidence is contrary to the trial court's findings. *Id.* In summary, we consider evidence favorable to termination if a reasonable fact finder could, and we disregard contrary evidence unless a reasonable fact finder could not. *Id.*

We remain mindful that we may not weigh a witness's credibility because it depends on appearance and demeanor, and these are within the domain of the trier of fact. *Id.* Even when such issues are found in the appellate record, we must defer to the fact finder's reasonable resolutions. *Id.*

In a factual sufficiency review, we also give due deference to the trier of fact's findings, avoiding substituting our judgment for the fact finder. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex.

2006). "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction [in the truth of its finding], then the evidence is factually insufficient." *Id.* (quoting *J.F.C.*, 96 S.W.3d at 266).

With regard to best interest, courts must accept the strong presumption that maintaining the parent-child relationship is in a child's best interest. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam). However, we also presume that permanently placing a child in a safe place in a timely manner is in the child's best interest. TEX. FAM. CODE ANN. § 263.307(a) (West 2014). In determining whether a parent is willing and able to provide the child with a safe environment, the court should consider that factors set out in section 263.307(b), which include: (1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the Department or other agency; (5) whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills; and (13) whether an adequate social support system consisting of an extended

family and friends is available to the child. *Id.* § 263.307(b); *see In re A.S.*, No. 04-14-00505-CV, 2014 WL 5839256, at *2 (Tex. App.—San Antonio Nov. 12, 2014, pet. denied) (mem. op.).

Although a best interest finding does not require proof of any particular, unique set of factors, *see In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied), courts may take into account the factors set forth by the Texas Supreme Court in *Holley v. Adams*: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. 544 S.W.2d 367, 371–72 (Tex. 1976). These considerations, i.e., "the *Holley* factors," are neither all-encompassing nor does a court have to find evidence of each factor before terminating the parent-child relationship. *See In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). Thus, lack of evidence as to some of the *Holley* factors does not preclude a trier of fact from reasonably forming a strong conviction or belief that termination is in a child's best interest. *Id.*

Additionally, although proof of acts or omissions under section 161.001(1) of the Texas Family Code does not relieve the Department from proving the best interest of the child, the same evidence may be probative of both issues. *Id.* at 28 (citing *Holley*, 544 S.W.2d at 370; *Wiley v. Spratlan*, 543 S.W.2d 349, 351 (Tex. 1976)). Moreover, in conducting a best interest analysis, a court may consider circumstantial evidence, subjective factors, and the totality of the evidence, in addition to direct evidence. *A.S.*, 2014 WL 5839256, at *2 (citing *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied)). Finally, a fact finder may judge a parent's

future conduct by his or her past conduct in determining whether termination of the parent-child relationship is in the best interest of the child. *Id.*

The Department's first witness was Molly Hobbs, the Department case worker. As set out above, in January 2014 the Department received a report G.G, the children's maternal aunt, had given birth to a child who tested positive for methamphetamines. *See* TEX. FAM. CODE ANN. § 263.307(b)(8) (history of substance abuse by child's family); *Holley*, 544 S.W.2d at 371–72. Ms. Hobbs stated three-year-old J.R. and two-year-old T.R., who had been left in G.G.'s custody by Mother, were immediately removed. *See* TEX. FAM. CODE ANN. § 263.307(b)(1) (child's age). The children were left in G.G.'s care because Mother was incarcerated for transporting and selling drugs. *See* TEX. FAM. CODE ANN. § 263.307(b)(8); *Holley*, 544 S.W.2d at 371–72. At the time of trial, Mother was on parole.

After the children were removed, the Department created plans of service for Father and Mother. Mother signed her plan of service in February 2014. Although Mother completed her parenting class and completed a "psychosocial," she had not yet completed outpatient drug treatment, family counseling with her children, or individual therapy. *See* TEX. FAM. CODE ANN. § 263.307(b)(10), (11) (willingness and ability of child's family to complete counseling services; willingness and ability of child's family to effect positive environmental and personal changes within reasonable time); *Holley*, 544 S.W.2d at 371–72. As to individual therapy, Ms. Hobbs stated Mother has "attempted" therapy, but is inconsistent, having "three no shows" with her individual therapist. *See* TEX. FAM. CODE ANN. § 263.307(b)(10), (11); *Holley*, 544 S.W.2d at 371–72. Moreover, Ms. Hobbs testified that Mother has failed to remain drug-free, failing to test "clean" on consecutive urinalysis exams. *See* TEX. FAM. CODE ANN. § 263.307(b)(8), (11); *Holley*, 544 S.W.2d at 371–72. According to Ms. Hobbs, Mother admitted she tested positive on her

urinalysis exam on October 17, 2014, less than a month before the termination hearing. *See* TEX. FAM. CODE ANN. § 263.307(b)(8), (11); *Holley*, 544 S.W.2d at 371–72.

As for the children's placement and proposed placement, Ms. Hobbs testified the children are currently with a maternal uncle and his wife. Ms. Hobbs described this placement as "wonderful," stating both of the children's needs are being met and they are protected and doing well. *See Holley*, 544 S.W.2d at 371–72. Ms. Hobbs testified the current home is safe and stable; drug use is not an issue in the uncle's home. *See id.* She stated this is a potential long-term placement as the uncle and his wife desire to adopt both children, allowing them to remain together. *See id.* According to Ms. Hobbs, the children need stability, which Mother cannot provide given her inability to maintain her sobriety. *See* TEX. FAM. CODE ANN. § 263.307(b)(8), (11); *Holley*, 544 S.W.2d at 371–72. Ms. Hobbs specifically testified it would not be in the best interests of the children to designate Mother as a possessory conservator given her continued drug use. She concluded by stating termination would be in the children's best interests.

The Department called Mother to testify. Mother stated she was released from jail on July 13, 2014; she was incarcerated on September 26, 2013. Mother admitted she "voluntarily" left the children with her sister, G.G., but denied knowing G.G. was using drugs. *See* TEX. FAM. CODE ANN. § 263.307(b)(8); *Holley*, 544 S.W.2d at 371–72. Mother admitted she did not provide her sister with any money to care for the children, nor has she provided for their care in any way since their removal. *See* TEX. FAM. CODE ANN. § 263.307(b)(12) (whether child's family demonstrates adequate parenting skills); *Holley*, 544 S.W.2d at 371–72. Admittedly, Mother provided Ms. Hobbs with a copy of a lease, establishing she had obtained a home. However, she acknowledged that she had failed to pay rent for November 2014 and the rent is past due. She claims she did not pay her rent because "a case worker . . . told me that it might look good . . . to volunteer to go to an inpatient for 30 days to detox . . . ." So, she told her landlord she was going to withhold her

rent payment until after the termination hearing because she might be entering a rehabilitation facility. Mother admitted she has not completed individual therapy and has not started family therapy. *See* TEX. FAM. CODE ANN. § 263.307(b)(10), (11); *Holley*, 544 S.W.2d at 371–72. She claimed the Department failed to set up family therapy. Mother testified she has two other children. However, those children are with their father.

Mother called a single witness, Jeanette Garza, her chemical dependency counselor. Ms. Garza testified she has been seeing Mother weekly since August 28, 2014. She stated Mother has been consistent and her attendance has been good. *See* TEX. FAM. CODE ANN. § 263.307(b)(10), (11); *Holley*, 544 S.W.2d at 371–72. Mother attends "group" three times a week, as well as twice-weekly "individual sessions." *See* TEX. FAM. CODE ANN. § 263.307(b)(10), (11); *Holley*, 544 S.W.2d at 371–72. In therapy, they work on Mother's "coping skills" to prevent a relapse of her drug use. They also work on anger management and other issues. Mother has also been attending a twelve-step program at least twice a week. *See* TEX. FAM. CODE ANN. § 263.307(b)(10), (11); *Holley*, 544 S.W.2d at 371–72. Ms. Garza opined that with continued therapy and consistency by Mother, Mother "could make the progress." However, Ms. Garza acknowledged Mother "is currently lacking some coping skills as far as dealing with certain high-risk situations," but has made "some efforts" to avoid those situations. In her last therapy session, Mother advised she is attempting to disassociate herself from her sister, G.G.

On cross-examination, Ms. Garza admitted that at the end of September 2014, she told the case worker there were certain things Mother needed to change, but Mother was having difficulty recognizing this. *See* TEX. FAM. CODE ANN. § 263.307(b)(10), (11); *Holley*, 544 S.W.2d at 371–72. She also acknowledged that initially Mother had a problem showing up in therapy, failing to even call to reschedule. *See* TEX. FAM. CODE ANN. § 263.307(b)(10), (11); *Holley*, 544 S.W.2d at 371–72. Additionally — for the first three weeks — Mother was not attending group therapy. *See*

TEX. FAM. CODE ANN. § 263.307(b)(10), (11); *Holley*, 544 S.W.2d at 371–72. Ms. Garza testified that after the initial period, she saw a "big change" in Mother until, of course, her relapse in October, which Ms. Garza learned about from the Department case worker. *See* TEX. FAM. CODE ANN. § 263.307(b)(8), (10), (11); *Holley*, 544 S.W.2d at 371–72.

Admittedly, there is evidence that recently, Mother made efforts toward resolving her drug-use issues and improving her coping skills. Despite this, we hold there is sufficient evidence that would have allowed the trial court to have reasonably formed a firm belief or conviction that termination was in the best interests of the children. *See J.P.B.*, 180 S.W.3d at 573.

Mother's efforts seemingly did not begin until the middle of September 2014, two months after her release, and then a mere month later, Mother testified positive for drugs. Accordingly, the trial court could have determined Mother's past behavior was more predictive of her future behavior than her more recent behavior. *See A.S.*, 2014 WL 5839256, at *2.

The evidence establishes Mother has failed to maintain her sobriety or complete other portions of her service plan. The evidence establishes, and Mother does not contest, she committed acts or omissions under section 161.001(1). *See C.H.*, 89 S.W.3d at 28. Specifically, Mother constructively abandoned her children with her sister, who was using drugs, and failed to comply with all of the provisions of her service plan that might have allowed her to obtain the return of the children. *See* TEX. FAM. CODE ANN. §§ 161.001(1)(N), (O).

The record shows J.R. and T.R. were three and two-years-old when the Department removed them from their aunt, which bears upon their best interests. *See* TEX. FAM. CODE ANN. § 263.307(b)(1). They have been in the care of their maternal uncle and his wife for quite some time, and the couple desire to adopt both children. *See Holley*, 544 S.W.2d at 371–72.

Recognizing that in conducting a best interest analysis, the trial court was permitted to consider circumstantial evidence, subjective factors, and the totality of the evidence, in addition to

the direct evidence presented, we hold the trial court was within its discretion in finding termination of Mother's parental rights would be in the best interests of the children. *See A.S.*, 2014 WL 5839256, at *2. In other words, the evidence is such that the trial court could have reasonably formed a firm belief or conviction that termination was in J.R.'s and T.R.'s best interests. *See J.P.B.*, 180 S.W.3d at 573. We therefore overrule Mother's issues.

## CONCLUSION

Based on the foregoing, we hold Father was required to prove by a preponderance of the evidence that but for his trial counsel's inadequate representation, the outcome would have been different, i.e., his parental rights would not have been terminated. *Compare Strickland*, 466 U.S. at 687 *with Cronic*, 466 U.S. at 658–59. Father did not meet his burden in this respect, failing to argue or prove the outcome would have been different. *See Strickland*, 466 U.S. at 687. We further hold the evidence was legally and factually sufficient to allow the trial court to find termination of Mother's parental rights was in the best interests of her young children. *See J.P.B.*, 180 S.W.3d at 573. Accordingly, we overrule Father's and Mother's issues and affirm the trial court's termination order.

Marialyn Barnard, Justice