**Opinion filed September 9, 2010**



In The

# Eleventh Court of Appeals

_____

## No. 11-09-00365-CV

_____

## IN THE INTEREST OF C.J.O., A CHILD

**On Appeal from the County Court at Law**

**Ector County, Texas**

**Trial Court Cause No. CC-20,459**

### O P I N I O N

The trial court terminated the parent-child relationship between Christopher Alan Hulme and C.J.O. and appointed C.J.O.'s stepfather, Donald Luis Hoover II, as his sole managing conservator. We affirm.

I. *Background Facts*

Hulme and Cassi Jo Otwell were involved in a romantic relationship in Wyoming. The couple ended their relationship after four months, and in mid-December 2002, Otwell moved to Texas. Hulme knew that Otwell was pregnant when she left, and he suspected that he might be the father. C.J.O. was born on June 3, 2003. Otwell married Donald Hoover on March 25, 2005. They had lived together for approximately one year prior to their marriage, and they had a daughter together. Hulme married Bucky Fran Hulme (Franny).

In late 2007, Hulme was diagnosed with cancer and was advised by his doctor to contact the mothers of potential offspring. At that point in time, Hulme did not believe that he had any children. Franny convinced him to talk to Otwell. Hulme called Otwell in November and learned that C.J.O. was his son. Otwell agreed to let Hulme visit C.J.O. After a few visits, Otwell, Hoover, and Hulme arranged for C.J.O. to spend a week with Hulme in Wyoming. The plan was for Otwell to meet Hulme at a halfway point to pick up C.J.O. at the end of the week; however, Otwell was in a fatal car accident on her way to the exchange.

Hulme refused to return C.J.O. to Hoover and, instead, kept him in Wyoming. Hulme also refused to bring C.J.O. to his mother's funeral. Hoover filed a petition seeking sole managing conservatorship of C.J.O., and Hulme responded with a counter-petition. Hoover amended his petition and asked the court to terminate Hulme's parental rights. The trial court conducted a bench trial, terminated Hulme's parental rights, and named Hoover sole managing conservator. The trial court also held that, in the event its termination order was overturned on appeal, Hoover would be C.J.O.'s sole managing conservator and Hulme would be his sole possessory conservator.

## II. *Issues*

Hulme challenges the trial court's termination order with four issues. Hulme argues that the termination order is supported by legally and factually insufficient evidence, that a visiting judge erred by failing to grant his motion to recuse the trial judge, that the trial court abused its discretion in denying his motion for new trial, and that the evidence does not support the trial court's alternative conservatorship ruling.

## III. *Factual and Legal Sufficiency*

Before terminating a parent's rights, the trial court must first find by clear and convincing evidence that termination is based upon one or more of the grounds enumerated in TEX. FAM. CODE ANN. § 161.001(1)-(2) (Vernon Supp. 2009). Clear and convincing evidence is that degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. TEX. FAM. CODE ANN. § 101.007 (Vernon 2008). The trial court found that Hulme knowingly placed or allowed C.J.O. to remain in conditions or surroundings that endangered his physical or emotional well-being, that Hulme engaged in conduct or knowingly placed C.J.O. with persons who engaged in conduct that endangered C.J.O.'s physical or emotional well-being, that Hulme failed to support C.J.O. in accordance

2

with his ability during a period of one year, and that Hulme voluntarily abandoned Otwell and C.J.O.

Hulme contends that the trial court's termination order is supported by legally and factually insufficient evidence; and he specifically challenges the trial court's findings that he abandoned C.J.O., that he failed to support C.J.O., and that he knowingly placed C.J.O. with others who endangered his emotional well-being. To determine if the evidence is legally sufficient in a parental termination case, we review all of the evidence in the light most favorable to the finding and determine whether a rational trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). To determine if the evidence is factually sufficient, we give due deference to the trial court's findings and determine whether, on the entire record, the trial court could reasonably form a firm conviction or belief that the parent committed an act that would support termination and that termination of the parent's parental rights would be in the child's best interest. *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002).

*A. Abandonment.*

A trial court may terminate the parent-child relationship if a parent voluntarily and knowingly abandons the mother of the child during pregnancy, fails to provide adequate support and medical care during her pregnancy, and fails to support the child after birth. Section 161.001(1)(H). The abandonment must be with knowledge of the pregnancy and must occur both during the pregnancy and after birth. *Id.* When the child is born out of wedlock and the father doubts his paternity, there is no enforceable support obligation until paternity is established. *Prokopuk v. Offenhauser*, 801 S.W.2d 538, 540 (Tex. App.—Houston [1st Dist.] 1990, writ denied).

Hulme argues that he did not abandon C.J.O. because he did not know that Otwell was pregnant with his child. Hulme testified at trial that, although he knew Otwell was pregnant when she left, he did not definitively know that she was carrying his child. He testified that, after Otwell left Wyoming, he contacted her mother, Jan Otwell, and was told that Otwell gave birth in April. Hulme testified that an April delivery date foreclosed him from being the father. Hulme also testified that he contacted several state agencies to learn if Otwell listed him as C.J.O.'s father on the birth certificate but that they would not release any information. Hulme

contended that he did not learn that he was C.J.O.'s father until four years later when he called Otwell to tell her of his cancer diagnosis.

Other evidence, however, conflicted with Hulme's testimony. Jan Otwell denied telling Hulme that the child was born in April. Melinda Heap, an acquaintance of Hulme and Franny, testified that Hulme told her that he had called Otwell shortly after C.J.O.'s birth and that she had confirmed he was the father and had asked him to stay out of their lives. It is significant also that Hulme contacted Otwell after being informed by the doctor to tell any potential mothers of his medical condition.

The trial court had conflicting evidence on Hulme's knowledge. A reasonable factfinder could disbelieve Hulme and conclude that he knew that Otwell was pregnant with his child and that he voluntarily abandoned her and C.J.O.

B. *Dangerous Environment and Conduct.*

The trial court also found that Hulme violated Section 161.001(1)(E) by knowingly engaging in conduct or placing C.J.O. with a person that endangered C.J.O.'s physical or emotional well-being. The offending conduct does not need to be directed at the child nor does the child actually have to suffer an injury to support a finding under Section 161.001(1)(E). *In re C.E.K.*, 214 S.W.3d 492, 496 (Tex. App.—Dallas 2006, no pet). Domestic violence may be considered evidence of endangerment. *Id*. If a parent abuses or neglects the other parent or other children, that conduct can be used to support a finding of endangerment even against a child who was not yet born at the time of the conduct. *In re W.J.H.*, 111 S.W.3d 707, 716 (Tex. App.—Fort Worth 2003, pet. denied).

Hulme and Franny were separated and were getting a divorce. Hulme initially denied that any domestic violence had occurred in their marriage, but he later admitted to one incident in which Franny was escorted out of their home by police. He claimed that Franny bit him on his back, and he acknowledged that he scratched her across the chest with a pair of keys but claimed that he did so while trying to get away from her. Heap described two incidents of domestic violence between Hulme and Franny. Heap recalled one incident where Hulme threw a cordless phone at Franny after a heated verbal argument. After a subsequent incident involving a physical altercation, Franny came to her house. Heap took pictures of Franny's black eye and a scratch on her chest. These pictures were introduced into evidence. Heap testified that the couple argued on a regular basis and routinely used foul language. She witnessed one incident where, in

4

C.J.O.'s presence, Franny cursed at someone for hitting their truck with a car door. She also witnessed Franny spank C.J.O. in a manner that she described as excessive, and she saw Hulme yell and curse at C.J.O. for hitting his truck with a frisbee.

The evidence is legally and factually sufficient to support the trial court's finding that C.J.O.'s physical and emotional well-being was endangered. Because only one statutory ground is necessary to support a termination order and because the trial court properly found two grounds, it is unnecessary to discuss the remaining statutory findings.

### C. Best Interest of the Child.

To terminate the parent-child relationship, the trial court must also find that termination is in the best interest of the child. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). Best interest does not require proof of any unique set of factors. *In re W.E.C.*, 110 S.W.3d 231, 240 (Tex. App.—Fort Worth 2003, no pet.). But courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). These include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id*. Additionally, evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *In re C.J.F.*, 134 S.W.3d 343, 354 (Tex. App.—Amarillo 2003, no pet.).

The evidence that Hulme abandoned Otwell and C.J.O. and that he endangered C.J.O.'s physical and emotional well-being also supports the finding that termination was in C.J.O.'s best interest. Additionally, the trial court could reasonably consider Hulme's refusal to allow C.J.O. to attend his mother's funeral as evidence of poor judgment and poor parental skills. The trial court had legally and factually sufficient evidence that the termination of Hulme's parental rights was in the best interest of C.J.O. Accordingly, Hulme's first issue is overruled. This holding makes it unnecessary to address Issue Two: Hulme's challenge to the trial court's alternative conservatorship ruling.

IV. *Motion to Recuse*

Hulme filed a motion to recuse and a judicial grievance. The Honorable Weldon Kirk[1] was assigned to hear the recusal motion and, after an evidentiary hearing, denied it. Hulme contends that Judge Kirk erred because several of the trial court's rulings evidence a bias, because his pending judicial grievance might cause the trial court's impartiality to be questioned, and because the trial court's friendship with opposing counsel improperly influenced its rulings.

Recusal is warranted when: (1) the trial judge's impartiality may be questioned, (2) the judge has a personal bias or prejudice concerning a party or the subject matter of the case, and (3) the judge has been a material witness concerning the proceeding. TEX. R. CIV. P. 18b(2)(a)-(c). The denial of a motion to recuse is reviewed under an abuse of discretion standard. TEX. R. CIV. P. 18a(f). We review the totality of the circumstances and will not reverse an assigned judge's ruling if it is within the zone of reasonable disagreement. *Kemp v. State*, 846 S.W.2d 289, 306 (Tex. Crim. App. 1992).

The movant bears the burden of proving that a recusal is warranted and satisfies that burden only if he shows bias or partiality to such an extent as to deprive him of a fair trial. *See Abdygapparova v. State*, 243 S.W.3d 191, 196 (Tex. App.—San Antonio 2007, pet. ref'd). Bias sufficient to warrant a recusal commonly stems from an extrajudicial source. *Id.* But, when recusal is based on in-court proceedings, the alleged biased rulings or remarks must display a deep-seated favoritism or antagonism that would make a fair judgment impossible. *Ludlow v. DeBerry*, 959 S.W.2d 265, 281 (Tex. App.—Houston [14th Dist.] 1997, no pet.).

Hulme points to a pretrial ruling as evidence of the trial court's bias and attributes it to the trial court's friendship with opposing counsel. During a hearing on temporary orders, the trial court refused to admit a previous non-court-ordered paternity test. Instead, the trial court ordered new genetic testing that included the mother's DNA. Hulme has failed to establish any impropriety in connection with this ruling, let alone any deep-seated favoritism or antagonism.

Hulme's judicial grievance was based upon the same pretrial ruling. He testified at the recusal hearing that the trial court could not be impartial with this grievance still pending. Allowing recusal in every situation where a party files a judicial grievance would result in unwarranted recusal and would create an easy means of recusing a judge without any actual evidence of bias. *See Sommers v. Concepcion*, 20 S.W.3d 27, 42 (Tex. App.—Houston [14th

---

[1]We note with sadness that Judge Kirk has since passed away, following a long and distinguished judicial career.

Dist.] 2000, pet. denied). Hulme's general assertion that the trial court was biased because of the pending grievance is not sufficient to establish the requisite bias or prejudice.

Given the totality of the circumstances, Hulme did not present sufficient evidence to rebut the presumption of a neutral and detached trial court. Judge Kirk did not abuse his discretion by denying Hulme's motion to recuse. Issue Three is overruled.

## V. *Motion for New Trial*

Hulme also argues that the trial court erred when it refused to grant his motion for a new trial based on newly discovered evidence. Heap testified at trial that a pending burglary charge was being reduced to a misdemeanor. Hulme contended that Heap committed perjury and that, in fact, her proceedings were stayed pending a mental evaluation. Hulme also challenged Heap's trial testimony concerning Franny's drug use. Hulme testified at trial that Franny never had a problem with drugs, that she had used pain medication after a knee surgery, but that she was not currently on any medication. Heap testified that Hulme had expressed concern about Franny's drug use, that Franny had previously been addicted to meth, that she would steal Hulme's pain medication, and that she was currently using methadone. Hulme produced a letter from Franny's physician to show that she could not have abused methadone because she was prescribed morphine.

We review a trial court's denial of a motion for new trial under an abuse of discretion standard of review. *Dolgencorp of Tex., Inc. v. Lerma*, 288 S.W.3d 922, 926 (Tex. 2009). The party moving for a new trial based on newly discovered evidence must show the following: (1) that the evidence was unknown or unavailable to the movant during trial; (2) that the movant's failure to discover or obtain the evidence during trial was not due to a lack of diligence; (3) that the new evidence is admissible and not merely cumulative or impeaching; and (4) that the evidence is so material that it would probably produce a different result in a new trial. *Jackson v. Van Winkle*, 660 S.W.2d 807, 809 (Tex. 1983), *overruled on other grounds by Moritz v. Preiss*, 121 S.W.3d 715, 720-21 (Tex. 2003).

Hulme was aware of Heap's pending criminal charges in Wyoming as he first introduced the subject during her cross-examination. This evidence is either not newly discovered, or Hulme did not use due diligence to discover the nature of those charges. The doctor's letter is not part of our record, but even if it and the Wyoming criminal documents are considered newly

7

discovered evidence, their sole purpose was to undermine Heap's testimony.  Consequently, the trial court did not err by overruling Hulme's motion for new trial.  Issue Four is overruled.

## VI. *Conclusion*

The order of the trial court is affirmed.


RICK STRANGE

JUSTICE


September 9, 2010

Panel consists of:  Wright, C.J.,
McCall, J., and Strange, J.