**Opinion filed October 4, 2019**



In The

# Eleventh Court of Appeals

_____

## No. 11-19-00132-CV

_____

## IN THE INTEREST OF M.S., N.S., C.S., AND K.S., CHILDREN

**On Appeal from the 259th District Court**
**Jones County, Texas**
**Trial Court Cause No. 024152**

### M E M O R A N D U M   O P I N I O N

After a second termination trial, the trial court signed an order in which it terminated the parental rights of M.S., N.S., C.S., and K.S.'s mother and father. Only the father (hereinafter "Father") has appealed. We affirm.

*Termination Findings and Standards*

The termination of parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001(b) (West Supp. 2018). Evidence is clear and convincing if it "will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007 (West 2019). To terminate parental rights, it must be shown by clear and convincing

evidence that the parent has committed one of the acts listed in Section 161.001(b)(1)(A)–(U) of the Family Code and that termination is in the best interest of the child. *Id.* § 161.001(b).

In this case, the trial court found that Father committed three of the acts listed in Section 161.001(b)(1)—those found in subsections (D), (E), and (O). Specifically, the trial court found that Father (1) knowingly placed or knowingly allowed the children to remain in conditions or surroundings that endangered the children's physical or emotional well-being, *see id.* § 161.001(b)(1)(D); (2) engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered the children's physical or emotional well-being, *see id.* § 161.001(b)(1)(E); and (3) failed to comply with the provisions of a court order that specifically established the actions necessary for Father to obtain the return of the children who had been in the permanent or temporary conservatorship of the Department of Family and Protective Services (hereinafter "the Department") for not less than nine months as a result of the children's removal from Father for abuse or neglect, *see id.* § 161.001(b)(1)(O). The trial court also found, pursuant to Section 161.001(b)(2), that termination of Father's parental rights was in the best interest of the children.

In two issues, Father challenges the legal sufficiency of the evidence to support the trial court's findings under subsections (D) and (E) that Father endangered the children. To determine if the evidence is legally sufficient in a parental termination case, we review all the evidence in the light most favorable to the finding and determine whether a rational trier of fact could have formed a firm belief or conviction that the finding was true. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (per curiam) (citing *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)); *In re M.G.*, No. 11-18-00351-CV, 2019 WL 2426775, at *1 (Tex. App.—Eastland June 11, 2019, no pet.). In conducting our review, we must consider all the evidence. *In*

2

*re J.P.B.*, 180 S.W.3d at 573. We assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. *Id.* (citing *In re J.F.C.*, 96 S.W.3d at 266). We cannot weigh witness-credibility issues that depend on the appearance and demeanor of the witnesses, and we must defer to the factfinder's determinations as long as they are reasonable. *Id.*

*Background*

On June 12, 2017, one of M.S., N.S., C.S., and K.S.'s siblings was removed from the home following an outcry of physical abuse by Father. On June 14, 2017, M.S., N.S., C.S., and K.S., along with three younger siblings, were also removed from the home. The following day, the Department filed a petition for protection of the children, for conservatorship, and for termination of the parental rights of the mother (hereinafter "Mother") and Father. In a first amended original petition filed on June 26, 2017, the Department sought to terminate Father's parental rights based on subsections (D), (E), (K), (N), and (O) of Section 161.001(b)(1). Attached to the first amended petition were three affidavits by representatives of the Department stating the factual bases for the removal of the children, including physical abuse of the children, domestic violence by Father, abandonment of the children by Mother, use of drugs by Mother and Father, and the condition of the house in which the children were living.

The case was set for final hearing on June 18, 2018. Prior to trial, the parties represented to the trial court that they had reached an agreement, pursuant to which (1) Mother and Father would voluntarily relinquish their parental rights to the four youngest children; (2) the Department would be named the permanent managing conservator of all eight children; (3) Mother and Father would comply with service plans that, among other things, required them to successfully participate in classes and counseling and to submit to random drug tests; and (4) if Mother and Father successfully completed their service plans, M.S., N.S., C.S., and K.S. would be

3

returned, one at a time, to Mother's and Father's possession. The agreed plan would take approximately one year to complete.

The trial court signed an order reflecting the parties' agreement (the June 18 Order). The trial court appointed the Department as the permanent managing conservator and Mother and Father as possessory conservators of M.S., N.S., C.S. and K.S. The trial court specifically ordered (1) that Mother and Father were required to continue to "work" their respective service plans; (2) that Mother's and Father's failure to submit to random drug tests would be "considered a positive test"; (3) that, based on successfully completing the ordered services, Mother and Father would have "step-up" visitation and possession of the children; and (4) that, if Mother and Father failed to attend any scheduled therapeutic session or visitation with the children, visitation would cease and the parties would agree to a new schedule for the monitored return of the children. The trial court also ordered that, if Mother tested positive for any illegal substance:

> [T]he visitation and/or monitored returns of [M.S., N.S., C.S., and K.S.] will be suspended and the children will be placed back into foster care, if they are no longer in care, and the Department will file for termination of the parental rights of both [Mother] and [Father], due to failure to comply with the family plans of service for reunification.

The trial court denied all relief requested by the Department that was not expressly granted, terminated Mother's and Father's parental rights to the four youngest children, and severed those children from this case.

Pursuant to his service plan, Father was required to attend and fully participate in a drug/alcohol assessment and a psychological assessment; to attend and fully participate in substance abuse counseling, individual counseling, and family counseling; to obtain and maintain a legal and steady source of income as well as safe and stable housing; and, with regard to his role in the removal of the children, to provide a plan of action to prevent future abuse and neglect of the children. Father

4

was also required to attend Al-Anon meetings and provide meeting sheets to the Department every month; to attend, participate in, and successfully complete a certified Battering Intervention and Prevention Program (BIPP); and to attend and fully complete protective parenting classes. Father agreed to inform the Department of any changes in his address, phone number, or employment and to provide the Department with sufficient information on anyone living in the home so that a background check could be conducted. Finally, Father agreed not to use drugs or alcohol or participate in any criminal activity and to submit to random drug screens.

On June 21, 2018, Father suspected that Mother was using methamphetamine. Mother and Father "started having words," and Father pulled down Mother's pants to confirm that she had been injecting methamphetamine into her thighs. Father forced Mother to leave the house, notified the Department of what had happened, and asked the police to take the methamphetamine and drug paraphernalia that he had found in the house. Father was discharged from BIPP based on his behavior with Mother.

The Department required Mother and Father to submit to random drug tests on June 26, 2018. Mother failed to appear for the requested test and, pursuant to the June 18 Order and the service plan, was deemed to have tested positive. Father tested positive for methamphetamine at a level that indicated regular usage.

On July 3, 2018, the Department moved to modify the June 18 Order, seeking to terminate Mother's and Father's parental rights to M.S., N.S., C.S., and K.S. The Department pleaded that Mother's and Father's conduct since the June 18 Order constituted a material and substantial change in circumstances and requested that Mother's and Father's parental rights be terminated based on their failure to comply with the June 18 Order and based on the grounds listed in the Department's petition to terminate that was filed prior to the June 18 Order.

Mother did not appear at the hearing on the Department's motion. Father appeared, denied that he used drugs or physically abused the children, and stated that he had filed a petition for divorce from Mother. Father requested that the trial court give him the opportunity to complete his service plan and be reunited with M.S., N.S., C.S., and K.S. The trial court terminated both Mother's and Father's rights to the children based on subsections (D), (E), and (O).

*Analysis*

In two issues, Father contends that, because he had no contact with the children after the June 18 Order was entered, the evidence is legally insufficient to support the trial court's findings that Father's parental rights should be terminated pursuant to subsections (D) and (E).

Father does not challenge the trial court's finding that Father's parental rights should be terminated pursuant to subsection (O). Further, there was clear and convincing evidence that Father failed to comply with the provisions of the June 18 Order; that, at the time of the final hearing, the children had been in the Department's care for over nine months; and that the children had been removed from Father's care due to abuse or neglect. Only one statutory ground is required to terminate parental rights. *In re N.G.*, 577 S.W.3d 230, 232–33 (Tex. 2019) (per curiam). Accordingly, we affirm the trial court's order based on its finding that Father failed to comply with the provisions of a court order that specifically established the actions necessary for him to obtain the return of the children.

However, even though we have upheld the trial court's finding under subsection (O), we must also address Father's complaints that the evidence is legally insufficient to support the trial court's findings under subsections (D) and (E). *Id.* at 234–35, 237 (concluding that due process and due course of law require an appellate court to address grounds (D) and (E) when raised by the parent on appeal and also require the appellate court to detail its analysis on grounds (D) and (E)).

6

We are required to do so because the termination of parental rights based on subsections (D) and (E) may serve as a basis for the possible termination of parental rights to a different child. *Id.* at 235; *see also* FAM. § 161.001(b)(1)(M) (providing for the termination of parental rights if there is clear and convincing evidence that the parent has had his parental rights terminated with respect to another child based on a finding that his conduct violated subsection (D) or (E)).

Relying on Section 161.004 of the Family Code, Father contends that (1) because this was the Department's second attempt to terminate his parental rights to M.S., N.S., C.S., and K.S., it could rely on conduct prior to the June 18 Order only if there had been a material and substantial change in circumstances since the order; (2) the trial court failed to find that there had been a material and substantial change in circumstances since the June 18 Order; and (3) there is no evidence of any conduct by Father after the June 18 Order that endangered the children as defined by subsections (D) and (E).

Section 161.004 of the Family Code provides that, after the rendition of an order that previously denied termination of the parent-child relationship, a trial court may terminate the parent-child relationship if:

(1)     The petition seeking to terminate parental rights is filed after the date the order denying the termination was rendered;

(2)     The "circumstances of the child, parent, sole managing conservator, possessory conservator, or other party affected by the order denying termination have materially and substantially changed since the date that the order was rendered;"

(3)     The "parent committed an act listed under Section 161.001 before the date the order denying termination was rendered; and"

(4)     The "termination is in the best interest of the child."

7

FAM. § 161.004(a) (West 2014). At a hearing under Section 161.004, the trial court may consider evidence presented at previous hearings in a suit to terminate the parent-child relationship of the parent with respect to the same child. *Id.* § 161.004(b).

However, when the Department seeks termination after a trial court's prior denial of termination, the Department is not limited to proceeding under Section 161.004. Rather, the trial court may terminate parental rights (1) under Section 161.001, which requires clear and convincing evidence of acts or omissions having occurred since the denial, or (2) under Section 161.004, which requires clear and convincing evidence of an act or omission under Section 161.001 that occurred before the denial and evidence of a material and substantial change since the denial. *In re A.L.H.*, 515 S.W.3d 60, 89 (Tex. App.—Houston [14th Dist.] 2017, pet. denied); *In re K.G.*, 350 S.W.3d 338, 352 (Tex. App.—Fort Worth 2011, pet. denied). In this case, the Department moved for termination based on Father's failure to comply with the June 18 Order as well as on the grounds set out in the petition to terminate, which included subsections (D) and (E). Therefore, if there was legally sufficient evidence of conduct by Father after the June 18 Order that would support the termination of his parental rights under either subsection (D) or subsection (E), the trial court, pursuant to Section 161.001, could terminate Father's parental rights on that statutory ground.

We turn first to Father's second issue in which he complains that there was legally insufficient evidence of conduct after June 18, 2018, to support the trial court's finding that Father's parental rights should be terminated pursuant to subsection (E). Both subsections (D) and (E) use the term "endanger." FAM. § 161.001(b)(1)(D), (E). "'To endanger' means to expose a child to loss or injury or to jeopardize a child's emotional or physical health." *In re S.R.*, 452 S.W.3d 351, 360 (Tex. App.—Houston [14th Dist.] 2014, pet. denied); *see also In re M.C.*, 917

8

S.W.2d 268, 269 (Tex. 1996) (per curiam). The term "means more than a threat of metaphysical injury or potential ill effects of a less-than-ideal family environment." *In re E.N.C.*, 384 S.W.3d 796, 803 (Tex. 2012). "In considering whether the evidence is legally sufficient to support a finding of endangerment, we must determine whether there was 'some evidence of endangerment on which a reasonable factfinder could have formed a firm belief or conviction of endangerment.'" *Id.* (quoting *In re J.O.A.*, 283 S.W.3d 336, 346 (Tex. 2009)).

The relevant inquiry under subsection (E) is whether evidence exists that the endangerment of the child's well-being was the direct result of the parent's conduct, including acts, omissions, or failures to act. *In re M.G.*, 2019 WL 2426775, at *4. Additionally, termination under subsection (E) must be based on more than a single act or omission; a voluntary, deliberate, and conscious course of conduct by the parent is required. *Id.*

Endangerment may be inferred from parental misconduct alone. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *In re P.N.T.*, No. 14-18-01115-CV, 2019 WL 2426692, at *18 (Tex. App.—Houston [14th Dist.] June 11, 2019, pet. filed). It is not necessary that the endangering conduct be directed at the child or that the child actually suffer injury. *In re M.G.*, 2019 WL 2426775, at *4; *see also Boyd*, 727 S.W.2d at 533. Further, the endangering conduct does not have to occur in the child's presence, and endangerment can arise based on a parent's conduct after a child was removed from the home. *Walker v. Tex. Dep't of Family & Protective Servs.*, 312 S.W.3d 608, 617 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). "As a general rule, conduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well-being of [the] child." *In re R.W.*, 129 S.W.3d 732, 739 (Tex. App.—Fort Worth 2004, pet. denied); *see also In re P.N.T.*, 2019 WL 2426692, at *18.

9

Domestic violence or drug use may constitute evidence of endangerment. *In re M.G.*, 2019 WL 2426775, at *4; *In re C.J.O.*, 325 S.W.3d 261, 265 (Tex. App.—Eastland 2010, pet. denied). Specifically, the "continued use of illegal drugs in the face of the threat of a parent's loss of his parental rights is conduct showing a voluntary, deliberate, and conscious course of conduct, which by its nature, endangers the child's well-being." *In re K.B.*, No. 05-17-00428-CV, 2017 WL 4081815, at *4 (Tex. App.—Dallas Sept. 15, 2017, no pet.) (mem. op.). When, as in this case, there has been a prior order denying termination, we may consider evidence of conduct that occurred prior to that order to corroborate evidence of a parent's endangering conduct after the order. *See Wilson v. Elliott*, 73 S.W. 946, 947 (Tex. 1903) (concluding that evidence of conduct before the first decree was admissible to corroborate the evidence of a subsequent conduct of a like nature); *C.B. v. Tex. Dep't of Family & Protective Serv.*, 440 S.W.3d 756, 766 (Tex. App.—El Paso 2013, no pet.); *see also B.L.M. v. J.H.M., III*, No. 03-14-00050-CV, 2014 WL 3562559, at *16 (Tex. App.—Austin July 17, 2014, pet. denied) (mem. op.) (concluding that trial court could consider conduct prior to first order that established parent engaged in continuous course of conduct that endangered child).

Here, three days after the June 18 Order, Father had an altercation with Mother in which he accused her of using drugs and pulled down her pants to look for injection marks. Father was discharged from BIPP based on his behavior. Further, even though Father's service plan prohibited him from using drugs, Father tested positive for methamphetamine on June 26, 2018. Although Father denied using methamphetamine, there was evidence that the level of methamphetamine found in the test could be due only to the regular use of the drug. Further, evidence of Mother's and Father's conduct prior to June 18, 2018, corroborated the existence of domestic violence and drug use in their relationship. Finally, there was evidence that Father's repeated failures to complete the actions that would allow him to reunite

with the children was negatively affecting the children and preventing them from healing from "the years of neglect and abuse that they suffered." In other words, Father's conduct after June 18, 2018, continued to subject the children to "a life of uncertainty and instability." *In re R.W.*, 129 S.W.3d at 739.

We conclude that there was legally sufficient evidence of conduct by Father after the June 18 Order to support the trial court's finding pursuant to Section 161.001(b)(1)(E) that Father knowingly engaged in conduct that endangered the children's physical or emotional well-being. Therefore, we overrule Father's second issue.

In his first issue, Father complains that the evidence is legally insufficient to support the trial court's finding that Father's parental rights should be terminated pursuant to subsection (D). As noted above, only one statutory ground is necessary to support the trial court's order terminating Father's parental rights, and Father has not challenged the trial court's finding that Father's parental rights to M.S., N.S., C.S., and K.S. should be terminated based on Section 161.001(b)(1)(O). To satisfy due process and due course of law concerns, we have also considered Father's challenge to the sufficiency of the evidence to support the trial court's finding that Father's parental rights should be terminated based on Section 161.001(b)(1)(E) and have determined that the evidence is sufficient for a rational factfinder to form a firm belief or conviction that Father engaged in conduct—after the June 18 Order—that endangered the children. Because we have affirmed the termination based on subsection (O) and because the termination of parental rights based on subsection (E) carries the same potential collateral consequences regarding Father's parental rights to another child as does a termination based on subsection (D), *see* FAM. § 161.001(b)(1)(M); *In re N.G.*, 577 S.W.3d at 234, we need not address Father's complaint that the evidence is legally insufficient to support the trial court's finding that Father's parental rights to M.S., N.S., C.S., and K.S. should be terminated based

11

on Section 161.001(b)(1)(D), *see* TEX. R. APP. P. 47.1.  We overrule Father's first issue.

*This Court's Ruling*

We affirm the trial court's order of termination.

KEITH STRETCHER

JUSTICE

October 4, 2019

Panel consists of: Bailey, C.J.,
Stretcher, J., and Wright, S.C.J.[1]

Willson, J., not participating.

---

[1]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.