**Opinion filed June 8, 2023**



In The

# Eleventh Court of Appeals

_____

## No. 11-23-00007-CV

_____

## IN THE INTEREST OF K.S. AND L.M., CHILDREN

---

**On Appeal from the 326th District Court**

**Taylor County, Texas**

**Trial Court Cause No. 10588-CX**

---

## M E M O R A N D U M   O P I N I O N

This is an appeal from an order in which the trial court terminated the parental rights of the mother to K.S. and L.M. and of the father to L.M. Both parents filed an appeal challenging the sufficiency of the evidence to support the trial court's finding that the termination of his or her parental rights is in the best interest of K.S. and L.M. We affirm the order of the trial court.

*Termination Findings and Standards*

The termination of parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001(b) (West 2022). To terminate parental

rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(b)(1)(A)–(U) and that termination is in the best interest of the child. *Id.* In this case, the trial court found that each parent had committed three of the acts listed in Section 161.001(b)(1)— those found in subsections (D), (E), and (O). Neither parent challenges these findings on appeal.

The trial court also found, pursuant to Section 161.001(b)(2), that termination of the mother's and the father's parental rights would be in the best interest of the children. *See id.* § 161.001(b)(2). On appeal, the mother challenges the sufficiency of the evidence supporting the termination of her parental rights to both children, and the father challenges the sufficiency of the evidence supporting the termination of his parental rights of L.M.[1]

To determine if the evidence is legally sufficient in a parental termination case, we review all of the evidence in the light most favorable to the finding and determine whether a rational trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). To determine if the evidence is factually sufficient, we give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002). We note that the trial court is the sole arbiter of the credibility and demeanor of witnesses. *In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014) (citing *In re J.L.*, 163 S.W.3d 79, 86–87 (Tex. 2005)).

With respect to the best interest of a child, no unique set of factors need be proved. *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). But courts may use the non-exhaustive *Holley* factors to shape their analysis.

---

[1]The father of L.M. is not the biological father of K.S., therefore there was no parental rights to be terminated as to the relationship between the father and K.S.

*Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent–child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.* Additionally, evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.J.O.*, 325 S.W.3d at 266.

### Evidence Presented at Trial

The record shows that the Department of Family and Protective Services became involved in this case at the birth of L.M. in August 2021. The initial intake resulted from the mother's drug screen showing positive results for cannabinoids at the birth of L.M. Both parents were requested to submit to drug screening during the Department's investigation period, and the mother's first test was positive for cocaine and marihuana.

K.S. and L.M. had been living with the mother at their maternal grandmother's house, but the children were placed with L.M.'s father after their grandmother did not cooperate with the Department's screening process to become an appropriate safety monitor. K.S.'s drug screen results were pending at the time of the initial transfer, but the child subsequently tested positive for cocaine benzoylecgonine at the level of 515 pg/mg, cocaine metabolite at the level of 13762 pg/mg, and marihuana metabolite at the level of 1.4 pg/mg. The father tested positive for

cocaine several days after the transfer, leading to the children's removal and placement in a foster home.

The permanency case manager testified that the Department created family service plans for the mother and for the father with the parents' participation. Each parent was required by court order to comply with his or her service plan. The case manager testified that, while the parents had made progress in some plan requirements prior to the initial permanency hearing, they had also failed to allow access to the home to identify any additional occupants, failed to provide and maintain safe and appropriate housing, and failed to comply with seven requested drug screenings. The case manager also testified about potential tampering with the hair follicle testing when both the mother and father bleached their hair. Their respective family plans of service were subsequently amended to include prohibitions against any bleaching, dyeing, or otherwise tampering with their hair.

As a result of the suspected tampering, the permanency hearing order required the mother and father to submit to a nail drug test. The mother's nails were too short for testing, however, so the mother provided a urine sample for analysis. The mother tested positive for marihuana, and the father tested positive for amphetamines, methamphetamines, and marihuana.

Following the completed drug screen, the parents failed to comply with another seven requested screenings. They also continued to fail to provide and maintain safe and appropriate housing. Over the course of the pending case, the parents moved to several different locations. They also refused to verify the identities of any additional occupants of the residences.

Both parents failed to comply with their counseling requirements and prove a legal source of income. Additionally, during the pendency of the case, the mother made a social media post asking for financial assistance to help care for K.S.,

4

attaching post-surgical photos of K.S. However, the children were in the care of foster parents at that time.

Since birth, K.S. has suffered from a brain vascular malformation that requires regular appointments and surgeries to treat the condition. The condition also demands monitoring of the child's liver and heart function. When the case began, the parents had been unable to schedule the surgeries required to treat K.S.'s condition. At the time of trial, neither parent had a reliable means of transportation to get K.S. to the multiple appointments per month required for treatment.

The children were placed with a foster family following their removal, and the evidence at trial showed that the foster mother, a nurse, was uniquely qualified to meet K.S.'s medical needs. She scheduled appointments and transported K.S. to several specialists treating his medical conditions. The foster mother testified that the children have done well in their home and have made significant developmental improvements. She has a good relationship with the children who come to her when they need assistance or comfort. The foster mother testified that she loves the children like her own biological children and desired to adopt them if the parental rights were terminated. She has long-term goals for K.S. and L.M. to go to college, get married, and similar things she would wish for her own children.

At the termination hearing, both parents requested a continuance to attempt to obtain beds in an inpatient treatment facility. The trial court denied the continuance due to the dismissal date falling twenty days after the hearing. The Department's plan was for the parental rights of both parents to be terminated and for an unrelated adoption of K.S. and L.M. by the placement family. The case manager testified that it was not in K.S. and L.M.'s best interest to return home to the parents at this time and indicated that the termination of the parental rights of both parents would be appropriate.

*Analysis*

In each parent's sole issue, they assert that the evidence presented at trial was insufficient to prove by clear and convincing evidence that the termination of that parent's parental rights would be in the best interest of K.S. and L.M. The mother asserts that the trial court should have continued the current placement with the foster family to give her time to complete an inpatient rehabilitation program. The father makes the same argument. We note in this regard that the termination case had been pending for almost a year when trial commenced.

The trial court, as the trier of fact, is the sole judge of the witnesses' credibility. *A.B.*, 437 S.W.3d at 503. We are not at liberty to disturb the determinations of the trier of fact as long as those determinations are not unreasonable. *J.P.B.*, 180 S.W.3d at 573. Giving due deference to the trial court, we hold that, based on the evidence presented at trial and the *Holley* factors, the trial court could reasonably have formed a firm belief or conviction that termination of the mother's parental rights would be in the best interest of the children and the termination of the father's parental rights would be in the best interest of L.M. *See Holley*, 544 S.W.2d at 371–72.

As set forth above, the Department presented evidence that the mother and the father engaged in substance abuse in K.S. and L.M.'s presence. K.S. tested positive for marihuana and cocaine immediately prior to being removed from the parent's care. Both parents failed to provide and maintain a safe home for the children and engaged in a course of conduct that endangered K.S. and L.M. The parents also failed to demonstrate that they could sufficiently meet K.S.'s medical needs now or in the future.

Considering the record as it relates to the actions of the mother and the father, the children being exposed to marihuana and cocaine while in the parents' care, the emotional and physical danger to the children now and in the future, the desires of the children (who were too young to express any desire), the emotional and physical

6

needs of the children now and in the future, the parental abilities of those involved, and the plans for the children by the Department, we hold that the evidence is legally and factually sufficient to support (1) the finding that termination of the mother's parental rights is in the best interest of the children and (2) the finding that termination of the father's parental rights is in the best interest of L.M. *See id.* We defer to the trial court's findings as to the children's best interest, *see C.H.*, 89 S.W.3d at 27, and we cannot hold in this case that the trial court's findings as to best interest are not supported by clear and convincing evidence. Accordingly, we overrule each parent's sole issue on appeal.

*This Court's Ruling*

We affirm the order of the trial court.

JOHN M. BAILEY
CHIEF JUSTICE

June 8, 2023

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.