**Opinion filed March 7, 2024**



In The

# Eleventh Court of Appeals

_____

## No. 11-23-00233-CV

_____

## IN THE INTEREST OF Z.R.E.B., A CHILD

**On Appeal from the 91st District Court**
**Eastland County, Texas**
**Trial Court Cause No. CV2246323**

## M E M O R A N D U M   O P I N I O N

This is an accelerated appeal from an order in which the trial court terminated the parental rights of the mother, L.M., to her twenty-two-month-old daughter, Z.R.E.B.[1]  On appeal, Appellant presents three issues challenging the sufficiency of the evidence to support the trial court's findings.  We affirm the trial court's order of termination.

---

[1]The trial court also terminated the parental rights of the alleged father and any unknown father of the child.  Neither the alleged father nor an unknown father appealed.

*Termination Findings and Standards*

The termination of parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001(b) (West Supp. 2023). To terminate parental rights, clear and convincing evidence must demonstrate that the parent has committed one of the acts listed in Section 161.001(b)(1)(A)–(U),[2] and that termination is in the best interest of the child. *Id.* at § 161.001(b)(2).

In this case, the trial court found that Appellant failed to comply with the provisions of a court order that specifically established the actions necessary for her to obtain the return of Z.R.E.B, who had been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services (the Department) for not less than nine months as a result of the child's removal from Appellant under Chapter 262 of the Texas Family Code for the abuse or neglect of the child. *See id.* § 161.001(b)(1)(O). In accordance with Section 161.001(d), the trial court found that Appellant failed to establish by a preponderance of the evidence that she had made a good faith effort to comply with specific provisions of a court order but was unable to do so through no fault of her own. *See id.* § 161.001(d). The trial court also found, pursuant to Section 161.001(b)(2), that the termination of Appellant's parental rights was in the child's best interest. *See id.* § 161.001(b)(2). Appellant challenges both the legal and factual sufficiency of the evidence to support the trial court's findings.

---

[2]We note that the legislature recently amended Section 161.001 to include additional requirements for trial courts in termination suits filed by the Department of Family and Protective Services and a new ground for termination that relates to convictions for solicitation of a minor; however, these amendments only apply to suits filed on or after September 1, 2023. Act of May 26, 2023, 88th Leg., R.S., ch. 728, §§ 1, 3, 2023 Tex. Sess. Law Serv. 1770, 2177 (codified at FAM. § 161.001(b)(1)(V)); Act of May 29, 2023, 88th Leg., R.S., ch. 675, §§ 1, 8, 2023 Tex. Sess. Law. Serv. 1646–47 (codified at FAM. § 161.001(f), (g)). The original petition to terminate the parent-child relationship in this case was filed prior to September 1, 2023. We therefore apply the statute in effect on the date the suit was filed.

In reviewing a legal sufficiency challenge, we must decide whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.W.*, 645 S.W.3d 726, 741 (Tex. 2022). "Bearing in mind the required appellate deference to the factfinder, we look at all the evidence in the light most favorable to the finding, assume the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so, and disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id.* (internal quotation marks omitted). "However, we may not disregard 'undisputed facts that do not support the finding,' and the factfinder is 'the sole arbiter of the witnesses' credibility and demeanor.'" *Id.* (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002); (then quoting *In re J.F.-G.*, 627 S.W.3d 304, 312 (Tex. 2021)). In assessing whether the evidence is factually sufficient, we give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re L.C.C.*, 667 S.W.3d 510, 512 (Tex. App.—Eastland 2023, pet. denied).

With respect to the best interest of a child, no unique set of factors need be proved. *Id.* at 513. But courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the

parent. *Id.* Additionally, evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied).

*Procedural and Factual Background*

The record shows that the Department became involved with Z.R.E.B. shortly after she was born on December 12, 2021, while Appellant was incarcerated in a state jail facility.[3] During her incarceration, Appellant's parental rights to her two older children were terminated. Appellant was released from the state jail facility in July of 2022.

In May of 2022 prior to Appellant's release, the Department created a Family Plan of Service for Appellant and reviewed it with her. Pursuant to Appellant's service plan, she was required to:

- provide current contact and locating information to 2INgage, and update 2INgage on any changes in address, phone number, employment, housing or living conditions within three days of the change;

- obtain and maintain a legal source of income, and submit proof of employment;

- obtain and maintain safe and stable housing with all working utilities, provide proof thereof to her case manager, and allow the Department access to her home;

- submit to random drug screens, and test negative for all drugs for which she does not have a prescription;

- attend all scheduled visitation with Z.R.E.B., and give the case manager twenty-four hours' notice of any cancellations;

---

[3]The Department filed its original petition on January 31, 2022 in Harris County, and the case was transferred to Eastland County on April 1, 2022.

- attend weekly AA/NA meetings and provide the case manager with weekly sign-in sheets of attendance;

- not engage in criminal activity or be arrested for criminal activity;

- remain drug and alcohol free, not associate with known criminals or individuals who have "drug, alcohol, or criminal histories or have a lifestyle which pose a risk to her child"; and

- submit to and fully participate in a psychological evaluation.

Her other requirements included an infant parenting class, an infant nutrition class, and an "Infant Safe Sleep" class. The trial court approved the service plan, incorporated it into an order "as if the same were copied verbatim in this order," and made it an order of the court.

In the short time between her release from prison and her termination hearing, Appellant was arrested for and charged with misdemeanor criminal trespass, theft, assault, and resisting arrest. Police reports that were admitted at the hearing showed that a drowning incident at Lake Cisco occurred on September 23, 2022, involving Appellant and her three friends, all of whom were observed to be "heavily intoxicated," and who had engaged in trespassing. Less than a month later, on October 13, 2022, Appellant was involved in a road rage incident, and police reports show that she was arrested for assault and theft of the victim's phone.

At the hearing, Appellant acknowledged testing positive for marihuana, amphetamines, and methamphetamines on November 3, 2022, positive for marihuana and methamphetamine on April 18, 2023, and positive for methamphetamine on August 2, 2023. She likewise admitted to drinking alcohol "[a]bout two weeks" before the September 20, 2023 final hearing date.

Appellant's positive drug tests resulted in her visits with Z.R.E.B. being temporarily suspended. Appellant had forty-five scheduled visits with Z.R.E.B. throughout the pendency of the case, but with the suspension, she was only permitted

to attend twenty-four. Her 2INgage permanency case manager testified that out of those twenty-four, Appellant only made seventeen.

Regarding employment, Appellant told the trial court that since being released from prison, she had held several jobs and at the time of trial worked detailing cars. Appellant acknowledged, however, that she never provided proof of legal employment.

The trial court terminated Appellant's parental rights under Section 161.001(b)(1)(O) and found termination to be in the best interest of the child.[4] This appeal followed.

*Analysis*

*Subsection (O)*

Pursuant to subsection (O), the Department had the burden to prove by clear and convincing evidence that Appellant failed to comply with the requirements for reunification set forth in her service plan. The statute provides:

> The court may order termination of the parent-child relationship if the court finds by clear and convincing evidence:
>
> (1) that the parent has:
>
> . . .
>
> (O) failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department . . . for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child.

---

[4]The trial court also found by clear and convincing evidence that the Department made reasonable efforts to return the child to the parents—and specified such efforts—but that, despite the Department's efforts, a continuing danger remained in the home that prevented the child's return.

FAM. § 161.001(b)(1)(O).  Section 161.001(d) establishes an affirmative defense to termination for failure to comply with a court order under subsection (O):

> A court may not order termination under Subsection (b)(1)(O) based on the failure by the parent to comply with a specific provision of a court order if a parent proves by a preponderance of the evidence that:
>
> (1)  the parent was unable to comply with specific provisions of the court order; and
>
> (2)  the parent made a good faith effort to comply with the order and the failure to comply with the order is not attributable to any fault of the parent.

*Id.* § 161.001(d).

"Terminating the parent-child relationship for the parent's failure to comply with a court-ordered service plan necessarily requires a nuanced assessment of the parent's conduct and progress toward plan completion in light of the totality of the plan's requirements and overall goal."  *In re R.J.G.*, 681 S.W.3d 370, 381 (Tex. 2023).  "Subsection (O) contemplates direct, specifically required actions."  *In re A.L.R.*, 646 S.W.3d 833, 837 (Tex. 2022).  "We eschew vague plan requirements and have emphasized that the court's order describing the parent's necessary actions 'must be sufficiently specific to warrant termination of parental rights for failure to comply with it.'"  *R.J.G.*, 681 S.W.3d at 378 (quoting *In re N.G.*, 577 S.W.3d 230, 238 (Tex. 2019)).  Subsection (O) "authorizes termination for failure to comply with a service plan 'only when that plan requires the parent to perform specific actions.'"  *Id.* at 378–79 (quoting *A.L.R.*, 646 S.W.3d at 838).

"[T]ermination is not automatic or required, even if the Department properly proves a parent failed to comply with a specific plan provision."  *Id.* at 379 (citing FAM. § 161.001(b)(1)(O) ("The court *may* order termination of the parent-child relationship if the court finds by clear and convincing evidence . . . that the parent has . . . failed to comply." (emphasis added))).  "[T]he trial court bears the ultimate

7

responsibility for determining whether that finding supports termination." *Id.* Therefore, it is only the violation of "material" requirements of a plan that justify termination under subsection (O). *Id.* (citing *In re J.F.C.*, 96 S.W.3d 256, 278–79 (Tex. 2002) (affirming termination under subsection (O) based on parents' failure to comply with "material provisions of the trial court's orders"); *In re T.L.B.*, No. 01-21-00081-CV, 2021 WL 3501545, at *6 (Tex. App.—Houston [1st Dist.] Aug. 10, 2021, pet. denied) (mem. op.) (affirming termination under subsection (O) based on mother's failure to comply with "the material requirements of the plan"); *In re A.P.*, No. 13-19-00342-CV, 2019 WL 6315429, at *7 (Tex. App.—Corpus Christi–Edinburg Nov. 26, 2019, no pet.) (mem. op.) (affirming termination under subsection (O) based on mother's failure to comply with "material provisions of the service plan"); *In re A.D.*, 203 S.W.3d 407, 411–12 (Tex. App.—El Paso 2006, no pet.) (affirming termination under subsection (O) based on mother's failure to comply with "material requirements" of her plan)). "[I]f the noncompliance is trivial or immaterial in light of the plan's requirements overall, termination under (O) is not appropriate." *R.J.G.*, 681 S.W.3d at 379.

Appellant argues in her first issue that the evidence is legally and factually insufficient to prove that she failed to comply with the requirements of her service plan. She contends that the Department failed to show that she was aware of her service plan requirements, and that there was no "evidence presented as to how [she] violated each specific requirement."

Appellant testified that she reviewed her service plan with a Department representative in May of 2022, with the goal of reunification. Appellant agreed that she understood the failure to complete her service plan requirements could result in the termination of her parental rights to Z.R.E.B. The Department filed the Family Plan of Service with the trial court on June 7, 2022. *See* FAM. §§ 263.101–03 (West

2019). At a status hearing on June 14, 2022, the trial court found that the service plan was accurate, in compliance with previous court orders, and reasonably tailored to address any specific issues identified by the Department. *See id.* §§ 263.201–02. Nothing in the record shows that the service plan was modified or amended thereafter. Because it is Appellant's "burden to bring forth on appeal a record to demonstrate the absence of evidence to support the required findings," we presume the Family Plan of Service filed with the trial court contained the same requirements that Appellant reviewed and understood. *See In re G.X.H.*, 627 S.W.3d 288, 300 (Tex. 2021). We find Appellant's claim that she was unaware of her service plan requirements meritless.

Clear and convincing evidence supporting the trial court's finding under subsection (O) came from Appellant's own testimony, as she acknowledged failing to complete several requirements of her service plan. Although this case began in January of 2022, and she was released from prison in July of 2022, Appellant did not begin working on her services until after Z.R.E.B. was removed from Appellant's parents' care in September of 2022. After trial began on July 18, 2023, Appellant completed her psychological evaluation on July 24, and her mental health evaluation on August 3, 2023. And since her release, she has lived in at least three different locations but did not advise her caseworker of each relocation within three days of her address change.

Drug and alcohol restrictions are material service plan requirements that Appellant has violated. Appellant acknowledged testing positive for marihuana and methamphetamine, with the levels increasing. Despite Appellant's positive drug tests, she maintained throughout the pendency of the case that she did not have a problem with methamphetamine. Appellant claimed to have inadvertently used methamphetamine on Memorial Day of 2023 because she smoked marihuana and

9

"didn't know it was laced." According to Appellant, the multiple positive methamphetamine results were due to "[s]econdhand smoke" and "[drinking] Red Bulls," which "contain amphetamines." Appellant's mother agreed that Appellant has an anger problem and an alcohol problem, and that she believes that Appellant has continued using methamphetamine.

Although Appellant was required to remain alcohol-free during the pendency of the case, she admitted to continued alcohol use. Appellant acknowledged that she had an alcohol problem but asserted: "[I]f I want to drink every once in a while, I should be able to because I'm an adult." She was required to attend weekly NA or AA meetings, but only "attended a few of them." Appellant did not dispute missing her required weekly AA/NA meetings but claimed that she had a conflicting work schedule, despite failing to provide proof of employment.

The evidence further showed that Appellant missed several visits with Z.R.E.B., was arrested for four misdemeanor offenses within a month, and associated with people who have criminal histories and engage in drug and alcohol use. Appellant explained that she missed visits with Z.R.E.B. because she locked her keys in her car on one occasion, and her car could not make it to Abilene for another visit.

Finally, Appellant did not attend her infant parenting classes because they "[made] [her] really depressed." The evidence thus reflects that Appellant, at minimum, failed to: (1) attend her required classes; (2) submit to drug testing, test negative with each sample, and remain drug and alcohol free; (3) attend weekly AA/NA meetings; (4) refrain from engaging in criminal activities, avoid or incurring additional criminal charges, or avoid associating with persons who have criminal histories or engage in criminal conduct; (5) contact the Department within three days

10

of each address change; (6) follow her visitation schedule; and (7) provide proof of legal employment.

Appellant's court-ordered tasks were focused on addressing her drug and alcohol use, continuing criminal activity, instability, and inability to provide Z.R.E.B. with a safe and stable home environment. These requirements cannot be described as "so trivial and immaterial . . . that [Appellant's] noncompliance does not justify termination." *See R.J.G.*, 681 S.W.3d at 373, 381–82 (finding the evidence insufficient to support the trial court's termination order based on the appellant-mother's failure to comply with a requirement not expressly stated in her family service plan). Considering "the nature and degree of the asserted noncompliance," we conclude that termination of Appellant's parental rights pursuant to subsection (O) is justified under the totality of the circumstances. *See id.* at 373–74. We further conclude that the trial court's termination order pursuant to subsection (O) is supported by clear and convincing evidence. Accordingly, we overrule Appellant's first issue.

*Section 161.001(d) Affirmative Defense*

In her second issue, Appellant argues that she proved the affirmative defense to termination under subsection (O) by a preponderance of the evidence. Under Section 161.001(d), the parent must prove by a preponderance of the evidence that she was unable to comply with the court-ordered service plan, she made a good faith effort to comply with the order, and that her failure to comply is not attributable to any fault of her own. *See* Fam. § 161.001(d). The Department responds that Appellant waived this affirmative defense.

We recognize that the failure to plead an affirmative defense results in its waiver. Tex. R. Civ. P. 94. Nevertheless, even without deciding whether Appellant preserved this issue for our review, we address whether she failed to prove the

affirmative defense by a preponderance of the evidence. *See In re Z.M.M.*, 577 S.W.3d 541, 542–43 (Tex. 2019) (requiring appellate court to review a trial court's decision under Section 161.001(d) when addressing the sufficiency of the evidence to support a finding under Section 161.001(b)(1)(O)); *In re B.J.F.*, No. 01-23-00522-CV, 2024 WL 117174, at *21 (Tex. App.—Houston [1st Dist.] Jan. 11, 2024, pet. filed) (mem. op.) (addressing the merits of the appellant's Section 161.001(d) claim, even though she did not plead it or raise it at trial).

Appellant asserts that she made a good faith effort to comply with her service plan requirements and could not do so through no fault of her own. She points to her incarceration for the first seven months that this case was pending. Appellant further emphasizes that she did complete several of her requirements, including her psychological evaluation and drug counseling.

However, Appellant's partial compliance does not negate her persistent disregard of other material requirements. Appellant stated that she did submit to drug testing unless "[her] vehicle was not working," and acknowledged that she "failed a few" drug tests. She admitted to smoking marihuana and drinking alcohol in violation of her service plan requirements but claimed that positive methamphetamine test results were due to the marihuana being "laced," "[s]econdhand smoke," and "energy drinks."

When asked the reason why she did not advise her caseworker of address changes, she gave no explanation beyond, "I tried." According to Appellant, her employment detailing cars for cash prevented her from attending her required weekly AA and NA meetings, and she had never spoken to her sponsor because she "lost her number." Appellant did not complete her mental health evaluation until August 3, 2023, approximately twenty months after the case began, because she "tried scheduling appointments" but "got really busy." Appellant also attributed her

missed visits with Z.R.E.B. to car trouble, such as running out of gas and locking her keys in her car.

The trial court, as the sole arbiter of a witness' credibility, acted within its province to disbelieve Appellant's testimony, including her claim that she unintentionally ingested methamphetamine. *See In re J.O.A.*, 283 S.W.3d 336, 346 (Tex. 2009). And even if the trial court believed that Appellant's vehicle ran out of gas, she chose to work over attending weekly required meetings, and was too busy to schedule and attend required appointments. None of Appellant's proffered excuses demonstrate that she made a "good faith effort" to comply with her service plan requirements, nor were her failures anything other than her own fault. *See* FAM. § 161.001(d)(2).; *see also In re G.A.*, No. 10-21-00001-CV, 2021 WL 1686721, at *2 (Tex. App.—Waco Apr. 28, 2021, no pet.) (mem. op.) (holding that the appellant-mother failed to show that her failure to comply with the service plan "was not attributable to *any* fault of her own"); *In re L.L.N-P.*, No. 04-18-00380-CV, 2018 WL 6069853, at *3 (Tex. App.—San Antonio Nov. 21, 2018, pet. denied) (mem. op.) ("[I]ncarceration is not a legal excuse or defense to a parent's failure to comply with a service plan order."). Because Appellant did not prove by a preponderance of the evidence the applicability of the affirmative defense, we overrule her second issue.

*Best Interest*

In her third issue, Appellant contends that the evidence is legally and factually insufficient to prove by clear and convincing evidence that termination of her parental rights is in Z.R.E.B.'s best interest. The trial court, as the trier of fact, is the sole judge of the witnesses' credibility. *J.F.-G.*, 627 S.W.3d at 312. We are not at liberty to disturb the determinations of the trier of fact so long as those determinations are not unreasonable. *Id.* at 311–12; *In re J.P.B.*, 180 S.W.3d 570,

573 (Tex. 2005). Giving due deference to the trial court, we hold that, based on the evidence and the *Holley* factors, the trial court could have reasonably formed a firm belief or conviction that termination of Appellant's parental rights would be in the best interest of Z.R.E.B. *See Holley*, 544 S.W.2d at 371–72.

The trial court was presented with ample evidence that Appellant failed to comply with several material requirements in furtherance of the goals set by the Department. In fact, Appellant did not engage in meaningful efforts to comply with many of the terms of her service plan until the termination hearing was imminent.

Importantly, Appellant refused to stop using drugs and alcohol and continued engaging in criminal activity. Appellant drank alcohol and gave a myriad of excuses for her noncompliance—her vehicle running out of gas, locking her keys in her car (what she considered "car trouble"), her work schedule, and simply wanting to imbibe "every once in a while . . . because [she is] an adult." Appellant has, therefore, flagrantly ignored and failed to address the reasons for the Department's initial involvement.

The record further revealed that Appellant's parental rights to her two older children were terminated in January of 2022. *See C.H.*, 89 S.W.3d 17, 28 (Tex. 2002) (a parent's prior history of child neglect has a bearing on the parent's fitness to provide for other children). Appellant refused to take accountability for her actions that contributed to that termination order, claiming only that she "got [her] rights terminated while [she] was in prison."

Additionally, at the time of trial, Appellant was living in a camper because "the pump went out on the well" at her residence "a few weeks" prior. Although Appellant's caseworker found no safety hazards at Appellant's residence in June of 2023, the trial court could have reasonably found that Appellant failed to maintain

safe and stable housing, as the state and safety of her current living situation is unknown.

Most importantly, given the child-centered focus of the best-interest inquiry, we may not discount Z.R.E.B.'s safe and stable placement after removal. *See J.W.*, 645 S.W.3d at 746–47. Z.R.E.B. was born while Appellant was incarcerated in a state jail facility. Z.R.E.B. has no special needs, is currently "in an adoptive home," and the Department's goal is adoption by "a loving, caring family."

Based on Appellant's actions, the emotional and physical danger to the child now and in the future, the emotional and physical needs of the child now and in the future, the parental abilities of those involved, the drug and alcohol use and criminal activities of the parent, and the plans for the child by the Department, we hold that the evidence is legally and factually sufficient to support the trial court's finding that termination of Appellant's parental rights is in the best interest of the child. *See Holley*, 544 S.W.2d at 371–72. On this record, we conclude that the trial court's findings are supported by clear and convincing evidence. *See J.W.*, 645 S.W.3d at 741. Accordingly, we overrule Appellant's third issue.

*This Court's Ruling*

We affirm the order of the trial court.

W. BRUCE WILLIAMS

JUSTICE

March 7, 2024

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.

15