

# IN THE
# TENTH COURT OF APPEALS

### No. 10-22-00034-CV

## IN THE INTEREST OF J.M.F. AND J.H.B., CHILDREN

**From the County Court at Law
Ellis County, Texas
Trial Court No. 104557CCL**

## MEMORANDUM OPINION

Mother appeals from the trial court's order terminating her parental rights to her children, J.M.F and J.H.B.[1]  After hearing all the evidence, the trial court found by clear and convincing evidence that Mother (1) knowingly placed or knowingly allowed the children to remain in conditions or surroundings that endanger the children, (2) engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangers the children, and (3) failed to comply with the provisions of a court order that specifically established the actions necessary  to obtain the return of the children.  TEX. FAM. CODE ANN. § 161.001 (b) (1) (D) (E) (O)(West).  The trial court further found by clear

---

[1] The fathers of J.M.F and J.H.B. are not parties to this appeal.

and convincing evidence that termination was in the best interest of the children. TEX. FAM. CODE ANN. § 161.001 (b) (2) (West).

## SUFFICIENCY OF THE EVIDENCE

In issues three and four Mother argues that the evidence is insufficient to support the jury's predicate parental termination findings under Section 161.001 (b) (1) (D) and (E) of the Texas Family Code. Only one predicate act under section 161.001 (b) (1) is necessary to support a judgment of termination in addition to the required finding that termination is in the child's best interest. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). In conducting a legal sufficiency review in a parental termination case:

> [A] court should look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. To give appropriate deference to the factfinder's conclusion and the role of a court conducting a legal sufficiency review, looking at the evidence in the light most favorable to the judgment means that a reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. A corollary to this requirement is that a court should disregard all evidence that a reasonable factfinder could have disbelieved or found to be incredible. This does not mean that a court must disregard *all* evidence that does not support the finding. Disregarding undisputed facts that do not support the finding could skew the analysis of whether there is clear and convincing evidence.

*In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (per curiam) (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)) (emphasis in *J.P.B.*).

In a factual sufficiency review,

> [A] court of appeals must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing.... [T]he inquiry must be "whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations." A court of appeals should consider whether disputed

evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding. If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient.

*In re J.F.C.*, 96 S.W.3d 256, 266-67 (Tex. 2002) (quoting *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002)) (internal footnotes omitted) (alterations added).

**ENDANGERING THE CHILDREN**

To endanger means to expose to loss or injury, to jeopardize. *Texas Department of Human Services v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). The specific danger to a child's physical or emotional well-being need not be established as an independent proposition, but it may be inferred from parental misconduct. *Boyd,* 727 S.W.2d at 533.

Under subsection 161.001 (b) (1) (E), the relevant inquiry is whether evidence exists that the endangerment of the child's physical well-being was the direct result of the parent's conduct, including acts, omissions, or failures to act. *Id*. Under subsection (E) it can be either the parent's conduct or the conduct of a person with whom the parent knowingly leaves the child that endangers the physical or emotional well-being of the child. In either instance it is thus the direct result of the parent's conduct that results in the termination of the parental rights. It is not necessary, however, that the conduct be directed at the child or that the child actually suffer injury. *In the Interest of E.M.*, 494 S.W.3d at 222.

The Texas Department of Family and Protective Services first became involved with Mother in 2013 based upon an incident with her oldest son, A.D.[2] There were allegations that Mother hit A.D. in the mouth and dragged him upstairs by his arm. The allegations resulted in a reason to believe finding by the Department. The Department also made reason to believe findings on allegations of medical neglect and neglectful supervision of A.D. by Mother. The child was removed from Mother's care, and he has lived with his grandmother since he was four years-old. A.D. is now eleven years-old, and Mother has not seen him since he was removed from her care.

The Department became involved with Mother in 2017 based upon an incident involving J.M.F. Justin[3] cared for J.M.F. while Mother went to work. Justin left J.M.F. unsupervised and was convicted of the offense of abandoning and endangering a child with intent to return. Justin was sentenced to three years in state jail for the offense. Justin was also convicted for assault family violence in 2017 for choking Mother. Justin was incarcerated at the time of the termination hearing.

The Department next became involved with Mother over allegations that she physically abused J.M.F. Jaimani Scott, a former investigator with the Department, testified that she went to J.M.F.'s school to investigate the allegations. J.M.F. told Scott that he got a "whipping." Scott observed bruises on J.M.F.'s back and legs, and she also

---

[2] A.D. is not a part of this termination proceeding.

[3] Justin is the biological father of J.H.B.

saw red and purple "slashes and marks" on his back. Scott talked to Mother and told her about the allegations. Mother admitted that she "whipped" J.M.F. because of behavior issues he had at school. Mother was not aware that she left any bruises on J.M.F. when she whipped him. Mother told Scott that whipping J.M.F. was the only way to address his behavior issues.

Mother pleaded guilty to the offense of injury to a child for hitting J.M.F. with a belt. Mother was sentenced to three years in prison for the offense and was incarcerated at the time of the termination hearing.

Domestic violence may support a finding of endangerment under either Sections 161.001 (b) (1) (D) of Section 161.001 (E) depending on the given circumstances. *See In the Interest of A.L.H.*, 624 S.W.3d 47, 57 (Tex. App. —El Paso 2021, no pet.). The record shows that the children were exposed to domestic violence in the home. J.M.F. was a victim of domestic violence when Mother hit him with a belt. Mother and Justin are both incarcerated for acts of domestic violence. Domestic violence may be considered evidence of endangerment. *In re C.J.O.*, 325 S.W.3d 261, 265 (Tex. App. — Eastland 2010, pet. den'd). If a parent abuses or neglects the other parent or other children, that conduct can be used to support a finding of endangerment event against a child who was not born at the time of the conduct. *Id*.

We find that the evidence is sufficient to support the trial court's findings that Mother knowingly engaged in conduct or knowingly placed the children with persons

who engaged in conduct that endangers the children. TEX. FAM. CODE ANN. § 161.001 (b) (1) (E) (West). We overrule the fourth issue on appeal. Only one predicate act under section 161.001 (b) (1) is necessary to support a judgment of termination in addition to the required finding that termination is in the child's best interest. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). Therefore, we need not address the third issue. TEX. R. APP. P. 47.1. Because we find that the evidence is sufficient under Section 161.001 (b) (1) (E), we have addressed the concerns of protecting Mother's due process and due course of law rights. *See In the Interest of N.G.*, 577 S.W.3d 230 (Tex. 2019). and Section 161.001 (b) (1) (O).

## ECONOMICALLY DISADVANTAGED

In the first issue, Mother argues that the termination was improper under any of the three predicate acts because she is economically disadvantaged. In the second issue, Mother complains termination was improper under Section 161.001 (b) (1) (O) because she is economically disadvantaged.

Section 161.001 (c) provides that evidence the parent is economically disadvantaged does not constitute clear and convincing evidence sufficient for a court to make a finding under Subsection (b) and order termination of the parent-child relationship. *See* TEX. FAM. CODE ANN. § 161.001 (c) (2) (West). The statute limits the bases that a court may use to order a parental termination under subsection 161.001(b), but subsection (c) neither requires nor prohibits the Department from offering evidence that

the parent is economically disadvantaged. *In the Interest of A.F.*, No. 10-19-00335-CV, 2020 Tex. App. LEXIS 2328 at 56 (Tex. App. — Waco March 19, 2020, no pet.).

The trial court made a finding in accordance with Section 161.001 (c) that the order of termination of the parent-child relationship as to Mother is not based on evidence that Mother is economically disadvantaged. The evidence showed that Mother physically abused J.M.F. and was convicted of the offense of injury to a child. Mother had a history of inappropriate discipline of her children. The children were exposed to domestic violence in the home. The record supports the trial court's finding that the order of termination is not based upon evidence that Mother is economically disadvantaged. We overrule the first issue. Because we overrule Mother's first issue and also found sufficient evidence to support termination under Section 161.001 (b) (1) (E), we need not address the second issue. TEX. R. APP. P. 47.1.

## BEST INTEREST

In the fifth issue, Mother argues that the evidence is legally and factually insufficient to support the trial court's finding that termination is in the best interest of the children. In determining the best interest of a child, a number of factors have been considered, including (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals; (6) the plans for the child by these

individuals; (7) the stability of the home; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex.1976); *In re S.L.*, 421 S.W.3d 34, 38 (Tex. App. —Waco 2013, no pet.). The *Holley* factors focus on the best interest of the child, not the best interest of the parent. *In re S.L.*, 421 S.W.3d at 38. The goal of establishing a stable permanent home for a child is a compelling state interest. *Id*. The need for permanence is a paramount consideration for a child's present and future physical and emotional needs. *Id*.

J.M.F. was seven years-old at the time of the termination hearing and J.H.B. was three years-old; therefore, they did not express their desires. The record shows that they are both happy and thriving in their current placement. Veronica Rayfield, the caseworker for the Department, testified that both boys need a safe, structured home environment. J.M.F. is currently receiving weekly therapy. He has been diagnosed with attachment disorder, oppositional defiant disorder, and ADHD. He is currently taking medications for those disorders. J.M.F. has speech and developmental delays, and he is repeating kindergarten because of those delays. He is doing much better and is currently on track academically. J.H.B. is developmentally on target and does not take any medication. It is recommended that J.H.B. continue his weekly therapy. J.M.F. had behavior problems when he first entered his foster placement, but Rayfield testified neither boy currently has behavioral issues.

The record shows that Mother was aware of J.M.F.'s behavioral problems, but did not seek any treatment for him. Mother has a history of medical neglect and neglectful supervision of her children. Mother further has a history of inappropriate discipline of her children. She is currently serving time in prison for injury to a child after she beat J.M.F. with a belt resulting in injuries to his back. The children were exposed to domestic violence while in Mother's care.

There is nothing in the record to show that Mother has a plan for a stable living environment for the children upon her release from prison. Mother has a history of unstable housing and employment. She testified that she believes the children should stay in their current placement until either she or Justin are released from prison. Mother testified that she believed Justin could provide a stable environment for the children if he were released soon from prison. Justin was convicted of abandoning J.M.F and also for assault family violence.

The children are thriving and well cared for in their current placement. The children's CASA representative testified that the boys are very close to their foster mother. The foster mother will care for the boys until they are adopted. We find that the evidence is sufficient to support the trial court's finding that termination is in the best interest of the children. We overrule the fifth issue.

## CONCLUSION

We affirm the trial court's order terminating Mother's parental rights to J.M.F. and

J.H.B.

                                              STEVE SMITH
                                              Justice

Before Chief Justice Gray,
        Justice Johnson, and
        Justice Smith
Affirmed
Opinion delivered and filed June 22, 2022
[CV06]

