**Opinion filed September 14, 2023**



In The

# Eleventh Court of Appeals

_____

## No. 11-23-00138-CV

_____

## IN THE INTEREST OF N.C., A CHILD

---

### On Appeal from the 326th District Court
### Taylor County, Texas
### Trial Court Cause No. 10653-CX

---

### M E M O R A N D U M   O P I N I O N

This is an accelerated appeal from an order in which the trial court terminated the parental rights of the mother and father of N.C. Only the mother has appealed. In her sole issue on appeal, the mother (Appellant) challenges the legal and factual sufficiency of the evidence to support the trial court's finding that the termination of her parental rights is in the best interest of N.C. We affirm.

#### I. *Termination Findings and Standards*

The termination of parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001(b) (West 2022). To terminate one's parental rights, it must be shown by clear and convincing evidence that the parent

has committed one of the acts enumerated in Section 161.001(b)(1)(A)–(U) and that termination is in the best interest of the child. *Id.* In this case, the trial court found that Appellant had committed three of the acts listed in Section 161.001(b)(1)—those found in subsections (D), (E), and (O). Appellant does not challenge these findings on appeal.

The trial court also found, pursuant to Section 161.001(b)(2), that termination of Appellant's parental rights would be in the best interest of N.C. *See id.* § 161.001(b)(2). It is this finding that Appellant challenges on appeal.

To determine if the evidence is legally sufficient in a parental termination case, we review all of the evidence in the light most favorable to the finding and determine whether a rational trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). To determine if the evidence is factually sufficient, we give due deference to the finding and determine whether, based on the entire record, a factfinder could have reasonably formed a firm belief or conviction about the truth of the allegations raised against the parent. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002). In this regard, we note that the trial court is the sole arbiter of the credibility and demeanor of witnesses and the weight to be afforded their testimony. *In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014) (citing *In re J.L.*, 163 S.W.3d 79, 86–87 (Tex. 2005)).

With respect to the best interest of a child determination, no unique set of factors need be proved. *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). Further, the best interest determination does not restrict proof to any specific factor or factors. *In re D.M.*, 58 S.W.3d 801, 814 (Tex. App.—Fort Worth 2001, no pet.). However, courts may use and consider the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional

and physical danger to the child now and in the future; (4) the parental abilities of the individuals who seek custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or the proposed placement for the child; (8) the acts or omissions of the parent that may indicate that the existing parent–child relationship is not a proper one; and (9) any excuse for the parent's acts or omissions. *Id.*

To support a best interest finding, the Department is not required to prove each of the *Holley* factors; in some circumstances, evidence of the presence of only one factor will suffice. *In re D.M.*, 452 S.W.3d 462, 473 (Tex. App.—San Antonio 2014, no pet.). In fact, the same evidence that proves one or more statutory grounds for termination may also constitute sufficient evidence illustrating that termination is in the child's best interest. *C.H.*, 89 S.W.3d at 28; *C.J.O.*, 325 S.W.3d at 266.

The absence of evidence of some *Holley* considerations does not preclude the factfinder from reasonably inferring or forming a strong conviction or belief that termination is in the child's best interest, particularly if the evidence indicates that the parental relationship and the parent's conduct has endangered the safety of the child. *C.H.*, 89 S.W.3d at 27. This is so because the best interest analysis evaluates the best interest of the child, not the parent. *In re E.C.R.*, 638 S.W.3d 755, 767 (Tex. App.—Amarillo 2021, pet. denied) (citing *In re B.C.S.*, 479 S.W.3d 918, 927 (Tex. App.—El Paso 2015, no pet.)).

In this regard, the factfinder may measure a parent's future conduct by her past conduct and determine whether termination is in the child's best interest. *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied); *In re D.S.*, 333 S.W.3d 379, 384 (Tex. App.—Amarillo 2011, no pet.). The factfinder may infer that a parent's past conduct that endangered the safety and well-being of a child may recur in the future if the child is returned to the possession of the parent. *In re J.D.*,

3

436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.). Further, the factfinder may infer from a parent's past inability to meet a child's physical and emotional needs an inability or unwillingness to meet the child's needs in the future. *Id.*; *see also In re A.S.*, No. 11-16-00293-CV, 2017 WL 1275614, at *3 (Tex. App.— Eastland Mar. 31, 2017, no pet.) (mem. op.). The factfinder may also consider a parent's failure to comply with a court-ordered family service plan for reunification with the child in making its best interest determination. *In re E.C.R.*, 402 S.W.3d 239, 249–50 (Tex. 2013); *In re E.C.R.*, 638 S.W.3d at 769 (citing *In re S.B.*, 207 S.W.3d 877, 887–88 (Tex. App.—Fort Worth 2006, no pet.)).

## II. *Evidence Presented at Trial*

The record shows that the Department of Family and Protective Services became involved with N.C. when she was approximately two years old. The reason for the Department's involvement was because N.C., and others who lived in the home where N.C. resided, had witnessed domestic violence and observed Appellant and a male using drugs (methamphetamine and marihuana); some of N.C.'s siblings also reported that they had been victims of sexual abuse.

After the trial court ordered Appellant to comply with a family service plan, which required that Appellant complete a variety of services, Appellant advised Patricia Dotson, the case manager assigned to N.C.'s case, that she had struggled with drug addiction and maintaining a stable relationship with her children; Appellant also had a history of CPS involvement, felony criminal history, and claimed to have been sexually abused as a child. During the course of the Department's investigation, Appellant completed certain service plan requirements and, as a result, she was granted unsupervised visits and extended visitation with the children. However, based on reports of, and Appellant's admission to, ongoing drug use (she admitted to using methamphetamine approximately one week before the final hearing commenced) drug tests were administered for Appellant and N.C.—

4

N.C. tested positive for methamphetamine and marihuana and Appellant tested positive for amphetamines, methamphetamine, and marihuana.

Appellant attempted, but failed, to successfully address her drug addiction and parental neglect. She continued to use methamphetamine, relapsed, and did not complete inpatient treatment at Serenity House (she left the program), a local drug treatment facility. She did not appear for many of the supervised visits that were scheduled with her children. Although required by the service plan, Appellant ceased appearing for random drug testing. Appellant was difficult to contact and at times could not be located. According to Dotson, Appellant's overall conduct indicated that she was not a "dependable" parent.

Appellant's parental rights had been terminated to N.C.'s two older siblings— at one time these two children lived with their paternal great-grandmother while Appellant was incarcerated—and N.C. was eventually placed in foster care with her aunt and uncle; N.C.'s older siblings had also been placed in the same foster home. Dotson testified that the foster parents were in the process of adopting N.C.'s older siblings and that they also expressed their intention to adopt N.C. if Appellant's parental rights were terminated.

Appellant testified that she voluntarily left Serenity House without completing the inpatient treatment program because of an altercation that she had with another female patient. Despite her best efforts, Appellant was unable to return to Serenity House or arrange for the admission to other drug treatment facilities. Appellant testified that she failed to appear for random drug testing because of transportation issues. Although she was content with her older children being adopted by the foster parents, Appellant questioned the foster parent's motives for wanting to adopt N.C. Appellant defended the parenting skills of N.C.'s father and claimed that they could effectively "coparent" and care for N.C. However, despite the father's misconduct, Appellant continued to have a relationship with him.

## III. *Analysis*

In her sole issue, Appellant asserts that the evidence presented at trial was legally and factually insufficient to prove by clear and convincing evidence that the termination of her parental rights would be in the best interest of N.C. Specifically, Appellant contends that the trial court's best interest finding is flawed because (1) evidence was presented to support only "some, but not all" of the *Holley* factors and (2) no witness ever testified that termination would be in N.C.'s "best interest."

The trial court, as the trier of fact, is the sole judge of the witnesses' credibility and the weight to be afforded their testimony. *A.B.*, 437 S.W.3d at 503. We are not at liberty to disturb the trier of fact's determinations provided that those determinations are not unreasonable. *J.P.B.*, 180 S.W.3d at 573. Giving due deference to the trial court, as we must, we hold that, based on the evidence presented at trial and the *Holley* factors, the trial court could reasonably have inferred and formed a firm belief or conviction that the termination of Appellant's parental rights would be in the best interest of N.C. *See Holley*, 544 S.W.2d at 371–72.

As discussed above, the evidence showed that Appellant endangered N.C. by allowing her to be exposed to methamphetamine and marihuana while in Appellant's care. N.C. and Appellant tested positive for methamphetamine and marihuana and Appellant continued to use methamphetamine and marihuana during the pendency of the case below and while N.C. and the other children were in her care, which constituted an ongoing threat to N.C.'s safety. Appellant did not complete inpatient drug treatment, failed to arrange for other drug treatment options, ceased appearing for random drug testing, relapsed, and failed to regularly visit and maintain consistent contact with N.C. Appellant, despite the trial court's order, failed to comply with the requirements set forth in the court-ordered family service plan. Moreover, Appellant, by choice, continued to have a relationship with N.C.'s father, whose rights to N.C. were also terminated. Importantly, N.C.'s foster parents intend

to adopt her and her siblings, which would allow them to be in a safe environment and be permanently reunited. Here, nothing on the record suggests that Appellant will successfully rehabilitate.

Upon considering the record as it relates to Appellant's conduct and the environment to which N.C. was subjected to while in Appellant's care, the emotional and physical danger to N.C. now and in the future, the desires of N.C. (who was too young to express any desire), the emotional and physical needs of N.C. now and in the future, the parental abilities of those involved, and Appellant's unstable employment and living conditions, we conclude that the evidence is legally and factually sufficient to support the trial court's finding that the termination of Appellant's parental rights is in the best interest of N.C. *See Holley*, 544 S.W.2d at 371–72. We defer to the trial court's finding as to the child's best interest, *see C.H.*, 89 S.W.3d at 27, and we cannot conclude in this case that the trial court's best interest finding is not supported by clear and convincing evidence. Accordingly, we overrule Appellant's sole issue.

## IV. *This Court's Ruling*

We affirm the order of the trial court.


W. STACY TROTTER

JUSTICE


September 14, 2023

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.