Opinion filed November 2, 2023



In The

# Eleventh Court of Appeals

_____

## No. 11-23-00115-CV

_____

## IN THE INTEREST OF A.M., A CHILD

**On Appeal from the 220th District Court**

**Comanche County, Texas**

**Trial Court Cause No. FM01522**

## M E M O R A N D U M   O P I N I O N

This is an accelerated appeal from an order in which the trial court terminated the parental rights of the mother, Appellant, to her teenage son, A.M.[1]  On appeal, Appellant presents four issues in which she challenges the legal and factual sufficiency of the evidence to support the trial court's findings that she

---

[1] The trial court also terminated the parental rights of the unknown father of the child.  No appeal has been filed on behalf of the unknown father.

constructively abandoned the child, and that termination is in A.M.'s best interest. We affirm the trial court's order of termination.

*Termination Findings and Standards*

The termination of parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001(b) (West 2022). To terminate parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(b)(1)(A)–(U), and that termination is in the best interest of the child. *Id.* at § 161.001(b)(2).

In the present case, after a bench trial, the trial court found that Appellant constructively abandoned A.M. *See* FAM. § 161.001(b)(1)(N). The trial court further found, pursuant to Section 161.001(b)(2), that termination of Appellant's parental rights was in the child's best interest. *Id.* § 161.001(b)(2). Appellant challenges the legal and factual sufficiency of the evidence to support the trial court's findings.

In reviewing a legal sufficiency challenge, we must decide whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.W.*, 645 S.W.3d 726, 741 (Tex. 2022). "Bearing in mind the required appellate deference to the factfinder, we look at all the evidence in the light most favorable to the finding, assume the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so, and disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id.* (internal quotation marks omitted). "However, we may not disregard undisputed facts that do not support the finding," and the factfinder is the sole arbiter of the witnesses' credibility and demeanor. *Id.* (quoting *In re J.F.-G.*, 627 S.W.3d 304, 312 (Tex. 2021)) (internal quotation marks omitted).

In assessing whether the evidence is factually sufficient, we weigh disputed evidence contrary to the finding against all the evidence favoring the finding. *In re A.C.*, 560 S.W.3d 624, 631 (Tex. 2018). Giving due deference to the finding, we determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002); *In re L.C.C.*, 667 S.W.3d 510, 512 (Tex. App.—Eastland 2023, pet. denied).

With respect to the best interest of a child, no unique set of factors need be proved. *L.C.C.*, 667 S.W.3d at 513. However, courts may use the non-exhaustive Holley factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Id.* Additionally, evidence that proves one or more statutory grounds for termination may constitute evidence illustrating that termination is in the child's best interest. *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied).

### Evidence Presented at Trial

The record shows that on December 27, 2008, when A.M. was three months old, Appellant gave A.M. to Appellant's sister, B.S., and B.S.'s husband, S.S. Appellant's two oldest sons were living with B.S. and S.S., and Appellant told B.S.

she could not care for A.M. B.S. and S.S. raised A.M. for the next fourteen years, and he knew them as his mom and dad.

On November 18, 2021, the Department of Family and Protective Services (the Department) sought removal of A.M. and K.M.-T.,[2] the other child in B.S.'s and S.S.'s home, after B.S., S.S., and K.M.-T. tested positive for methamphetamines and amphetamines. The Department initially placed A.M. with his maternal grandmother but removed him after Appellant and her brother disobeyed the trial court's order by continuing to live in the home. According to a Department investigator, A.M. was not placed with Appellant because "[s]he has never raised [A.M.] and has a history of drug use." In addition to Appellant's criminal history, her history with the Department began in 2007, and her other children were removed without reunification.

Appellant appeared for the adversary hearing on December 9, 2021, and the status hearings on February 10, and 14, 2022. Prior to the adversary hearing, the permanency case manager filed a visitation plan suggesting weekly supervised visits between Appellant and A.M. At the adversary hearing, the trial court ordered Appellant to complete a psychological evaluation, counseling, parenting classes, and a drug and alcohol dependency assessment. Appellant refused to submit to drug testing and did not complete any other requirements.

At the status hearing, Appellant was advised that she must be willing and able to provide A.M. with a safe environment. The trial court also ordered supervised visits between Appellant and A.M., for Appellant to continue working with services, and to demonstrate an ability to remain drug free for two months. Appellant missed

---

[2]In August of 2016, B.S. and S.S. began caring for newborn K.M.-T. Appellant is unrelated to K.M.-T., and K.M.-T. is not the subject-child of this appeal.

4

all court settings thereafter, and never met with A.M.'s guardian ad litem or Department representatives, despite multiple contact attempts.

The second permanency case manager testified that she had called Appellant, left voicemails, and sent text messages. Appellant did not return a single contact attempt, and the case manager had not seen Appellant since the status hearing. A.M.'s guardian ad litem also attempted to speak to Appellant about her son. According to the guardian ad litem, Appellant only wanted to be involved if A.M. desired it. A.M. did not wish to see Appellant. During the ad litem's last phone conversation with Appellant, Appellant "sounded like she was asleep and then just hung up the phone."

On April 10, 2023, the final day of trial, the trial court found by clear and convincing evidence that Appellant constructively abandoned A.M., and terminated Appellant's parental rights.

*Constructive Abandonment*

Appellant asserts in her first two issues that the evidence is legally and factually insufficient to support the trial court's finding that she constructively abandoned A.M. Under subsection (N), a parent constructively abandons a child if the child has been in the permanent or temporary managing conservatorship of the Department for at least six months, if the Department has made reasonable efforts to return the child to the parent, if the parent has not regularly visited or maintained significant contact with the child, and if the parent has demonstrated an inability to provide the child with a safe environment. FAM. § 161.001(b)(1)(N). Section 263.307(b) of the Texas Family Code sets out a non-exhaustive list of factors to aid in determining the best interest of a child as it relates to the parents'

willingness and ability to provide the child with a safe environment. Fam. § 263.307(b) (West 2019).[3]

It is undisputed that Appellant gave A.M. to B.S. and S.S. when he was three months old, and they raised him as their son. The Department commenced suit, thereby assuming custody of A.M., on November 18, 2021. When trial began on November 3, 2022, A.M. had been in the Department's custody for nearly a year. During that time, Appellant had not visited or otherwise contacted A.M. Rather, she told A.M.'s guardian ad litem she "didn't want to interfere . . . [i]t was all whatever [A.M.] wanted."

Additionally, there is nothing in the record indicating the Department flatly "refused to allow Appellant to have contact or visit A.M.," as she asserts. Trial courts have the discretion to order supervised visitation for possessory conservators, as it did in this case. *See* Fam. §§ 263.107–.108; *see also In re J.J.R.S.*, 627 S.W.3d 211, 217–18 (Tex. 2021) ("the trial court did not abuse its discretion in vesting the managing conservators with complete discretion over Mother's access to the

---

[3]These factors include:

(1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the department; (5) whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child [or] the child's parents . . . ; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills . . . ; and (13) whether an adequate social support system . . . is available to the child.

Fam. § 263.307(b).

children"). This required Appellant to communicate with the Department and other designated individuals, which she failed to do.

Appellant continually refused to meet with the assigned case managers and A.M.'s guardian ad litem. In fact, she never answered the multiple phone calls and text messages from the case manager. *See In re L.C.M.*, 645 S.W.3d 914, 922 (Tex. App.—El Paso 2022, no pet.) (finding that, despite the lack of a service plan, the Department attempted multiple times beyond merely perfunctory efforts to contact and engage Father directly, which constituted reasonable efforts to return the child). The Department likewise attempted to place A.M. with Appellant's mother, but Appellant and her direct disobedience of the court's orders created an unsafe environment in that home. *See id.* The Department's efforts to contact Appellant, and to place A.M. with relatives, constitutes legally and factually sufficient evidence that reunification was attempted. *See id.*

Despite the Department's reasonable reunification efforts, Appellant's unwillingness to demonstrate that she could provide A.M. with a safe environment, and her failure to communicate or maintain significant contact, furnished the trial court with legally and factually sufficient evidence to support its finding that Appellant constructively abandoned A.M. under subsection (N). We overrule Appellant's first and second issues.

*Best Interest of the Child*

In Appellant's third and fourth issues, she asserts that the evidence presented at trial was insufficient to prove by clear and convincing evidence that the termination of her parental rights is in the best interest of A.M. The trial court, as the trier of fact, is the sole judge of the witnesses' credibility. *J.F.-G.*, 627 S.W.3d at 312. We are not at liberty to disturb the determinations of the trier of fact so long as those determinations are not unreasonable. *Id.* at 311–12; *In re J.P.B.*, 180

S.W.3d 570, 573 (Tex. 2002). Giving due deference to the trial court, we hold that, based on the evidence and the *Holley* factors, the trial court could have reasonably formed a firm belief or conviction that termination of Appellant's parental rights would be in the best interest of A.M. *See Holley*, 544 S.W.2d at 371–72.

The trial court was presented with ample evidence that Appellant lacked the parental abilities to meet A.M.'s physical and emotional needs now and in the future. She put forth nothing to show she could provide A.M. with a safe and stable home and meet all of his needs. As set forth above, Appellant voluntarily surrendered three-month-old A.M. to his maternal aunt and uncle and was not involved in his life since then, including during the pendency of this case. The record revealed that two of Appellant's other children were removed from her care after her brother sexually abused her daughter, and she has not been reunified with them. *See In re C.H.*, 89 S.W.3d at 28 (a parent's prior history of child neglect has a bearing on the parent's fitness to provide for his or her other children).

Most importantly, given the child-centered focus of the best-interest inquiry, we may not discount or minimize A.M.'s improvement since removal. The permanency case manager testified that he is doing "very well" in his placement in Abilene, is involved in middle school athletics, and his school attendance is consistent. Moreover, A.M. told his guardian ad litem he did not wish to see Appellant.

Upon considering the record as it relates to Appellant's actions and inactions, the emotional and physical danger to the child now and in the future, the emotional and physical needs of the child now and in the future, Appellant's parental abilities, the drug use and criminal activity of the parent, and the plans for the child by the Department, we hold that the evidence is legally and factually sufficient to support the finding that termination of Appellant's rights is in the best interest of the child.

*See Holley*, 544 S.W.2d at 371–72. On this record, we cannot hold that the trial court's findings are not supported by clear and convincing evidence. *See J.W.*, 645 S.W.3d at 741. Accordingly, we overrule Appellant's third and fourth issues.

*This Court's Ruling*

We affirm the order of the trial court.


JOHN M. BAILEY

CHIEF JUSTICE


November 2, 2023

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.

9