**Opinion filed December 21, 2023**



In The

# Eleventh Court of Appeals

_____

## No. 11-23-00184-CV

_____

## IN THE INTEREST OF Z.S., A CHILD

**On Appeal from the 326th District Court**
**Taylor County, Texas**
**Trial Court Cause No. 10763-CX**

## M E M O R A N D U M   O P I N I O N

This is an accelerated appeal from an order in which the trial court terminated the parental rights of the mother, Appellant, to her infant son, Z.S.[1]  On appeal, Appellant presents one issue in which she challenges the legal and factual sufficiency of the evidence to support the trial court's finding that termination is in Z.S.'s best interest.  We affirm the trial court's order of termination.

---

[1]The trial court also terminated the parental rights of Z.S.'s unknown father.  No appeal has been filed on behalf of the father.

*Termination Findings and Standards*

The termination of parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001(b) (West Supp. 2023). To terminate parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(b)(1)(A)–(U),[2] and that termination is in the best interest of the child. *Id.* at § 161.001(b)(2).

In the present case, after a bench trial, the trial court found that Appellant: (1) engaged in conduct which endangered Z.S.'s physical or emotional well-being; and (2) failed to comply with the provisions of a court order that specifically established the actions necessary for her to obtain the return of Z.S. who has been in the temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from Appellant for abuse or neglect. *See* FAM. § 161.001(b)(1)(E), (O). The trial court further found, pursuant to Section 161.001(b)(2), that termination of Appellant's parental rights was in the child's best interest. *Id.* § 161.001(b)(2). Appellant challenges the legal and factual sufficiency of the evidence to support the trial court's finding that termination of her parental rights is in the best interest of Z.S.

In reviewing a legal sufficiency challenge, we must decide whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.W.*, 645 S.W.3d 726, 741 (Tex. 2022). "Bearing in mind the

---

[2]We note that the legislature recently amended Section 161.001 to include additional requirements for trial courts in termination suits filed by the Department of Family and Protective Services (the Department) and a new ground for termination that relates to convictions for criminal or online solicitation of a minor; however, these amendments only apply to suits filed on or after September 1, 2023. Act of May 26, 2023, 88th Leg., R.S., ch. 728, §§ 1, 3, 2023 Tex. Sess. Law Serv. 1770, 2177 (codified at FAM. § 161.001(b)(1)(V)); Act of May 29, 2023, 88th Leg., R.S., ch. 675, §§ 1, 8, 2023 Tex. Sess. Law. Serv. 1646–47 (codified at FAM. § 161.001(f), (g)). The original petition to terminate the parent-child relationship in this case was filed on July 8, 2022. We therefore apply the law in effect on the date the suit was filed.

required appellate deference to the factfinder, we look at all the evidence in the light most favorable to the finding, assume the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so, and disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id.* (internal quotation marks omitted). "However, we may not disregard undisputed facts that do not support the finding," and the factfinder is the sole arbiter of the witnesses' credibility and demeanor. *Id.* (quoting *In re J.F.-G.*, 627 S.W.3d 304, 312 (Tex. 2021)) (internal quotation marks omitted).

In assessing whether the evidence is factually sufficient, we weigh disputed evidence contrary to the finding against all the evidence favoring the finding. *In re A.C.*, 560 S.W.3d 624, 631 (Tex. 2018). Giving due deference to the finding, we determine whether, based on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002); *In re L.C.C.*, 667 S.W.3d 510, 512 (Tex. App.—Eastland 2023, pet. denied).

With respect to the best interest of a child, no unique set of factors need be proved. *L.C.C.*, 667 S.W.3d at 513. But courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts

or omissions of the parent. *Id.* Additionally, evidence that proves one or more statutory grounds for termination may constitute evidence illustrating that termination is in the child's best interest. *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied).

*Evidence Presented at Trial*

The record shows that the Department became involved in July of 2022, approximately one month after Z.S. tested positive for cannabinoids at birth. Appellant's hair follicle drug test indicated that she was positive for methamphetamine and marihuana metabolite. During the month that Z.S. was in Appellant's care, Appellant left him in a car by himself and admitted to giving him apple juice and prune juice "for severe constipation."

After removal, the Department created a family service plan for Appellant with which the trial court ordered her to comply. Appellant's service plan required her to maintain safe and stable housing, to maintain steady and legal employment, and to undergo a mental health evaluation and psychological examination and follow all recommendations thereof. She was also ordered to submit to random drug testing and participate in substance abuse counseling.

Throughout the year that Appellant's case was pending, she lived in at least six different locations. Appellant resided in a women's shelter called the Noah Project when Z.S. was removed but was expelled shortly thereafter for violating the shelter's alcohol policy. She next went to a respite care facility through the Betty Hardwick Center but was removed for "coming home smelling of alcohol." Appellant stayed at the Salvation Army for "[a] couple of nights" before moving in with the manager of the strip club where she was working. She left after the manager assaulted her and rented an apartment in October of 2022.

4

Appellant became delinquent on rent, so she left her apartment after three or four months. She moved in with two males that she met while working at McDonald's. When the caseworker, Cameron Walker, visited the home, he saw drug paraphernalia and smelled marihuana. Shortly thereafter, Appellant and Jarred, one of her roommates who impregnated her, moved to a different apartment. Finally, in May of 2023, two months before the final hearing, Appellant briefly lived in San Antonio, then returned to Abilene.

Walker and Appellant were the only two testifying witnesses at the final termination hearing. They agreed on Appellant's lack of stable housing but gave differing accounts of Appellant's drug use and performance of her service plan requirements.

In addition to testing positive at the beginning of the case, Appellant tested positive for methamphetamine, cocaethylene, cocaine metabolite, and marihuana metabolite in September of 2022. She refused to submit to drug testing in December of 2022 and in February and March of 2023. Appellant testified that she last used methamphetamine "a long, long, long, long time ago," and "[e]xperimented with pills, silly stuff" when she was "much younger." However, she simultaneously attested that the only drug she ever used was marihuana.

Appellant attributed her positive test in June to methamphetamine exposure while living in a "trap house" in San Antonio. To explain her positive test results from September, Appellant posited that unknown individuals broke into her apartment and "laced [her] up," or put cocaine and methamphetamine in her drinks. When asked about Z.S.'s positive test, she stated that she had no concerns, because "there was no reason" for her or Z.S. to test positive.

Appellant maintained that Z.S. faced no difficulties or developmental issues. But according to Walker, Z.S. was born with gastrointestinal issues, an extra digit

on each hand, torticollis, and was slow to hold his head up and sit up on his own. Z.S. did not tolerate gluten, soy, and lactose for the first ten months of his life and required several months of occupational and physical therapy to overcome his developmental delays.

Since April of 2023, Z.S. has been living with his great aunt, S.J., in Virginia, who is willing and able to meet Z.S.'s physical, mental, and emotional needs long-term.

Prior to April, Appellant consistently attended her weekly supervised visits with Z.S., yet not without complications. The visitation supervisor reported that Appellant "seemed under the influence" on a few occasions, and that she once had to block the door to stop Appellant from leaving with Z.S. Appellant attempted to bring a beer to another visit and threatened a 2INgage employee in February of 2023.

Appellant asserted that she completed several of her service plan requirements, including individual counseling and substance abuse counseling. But Walker reported that Appellant did not engage in mental health services. Appellant was referred to substance abuse counseling and parenting classes but never attended her scheduled appointments. Appellant protested her bipolar disorder and alcohol use disorder diagnoses and failed to follow the recommendations of her psychological evaluation. According to Appellant, her mental health issues are resolved.

The Department asked the trial court to terminate Appellant's parental rights to Z.S. so that S.J. could adopt him. Appellant asked the trial court not to terminate her parental rights but requested that Z.S. remain with S.J. "until everything is sorted out." The trial court found by clear and convincing evidence that Appellant's drug use endangered Z.S.'s emotional or physical well-being, and that Appellant failed to comply with her Family Plan of Service, which she was ordered to complete by the

6

trial court for the return of her child. *See* FAM. § 161.001(b)(1)(E), (O). The trial court further found that terminating Appellant's parental rights was in Z.S.'s best interest. *See id.* § 161.001(b)(2).

*Best Interest of the Child*

In Appellant's sole issue, she asserts that the evidence presented at trial was insufficient to prove by clear and convincing evidence that the termination of her parental rights is in the best interest of Z.S. The trial court, as the trier of fact, is the sole judge of the witnesses' credibility. *J.F.-G.*, 627 S.W.3d at 312. We are not at liberty to disturb the determinations of the trier of fact so long as those determinations are not unreasonable. *Id.* at 311–12; *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). Giving due deference to the trial court, we hold that, based on the evidence and the *Holley* factors, the trial court could have reasonably formed a firm belief or conviction that termination of Appellant's parental rights would be in the best interest of Z.S. *See Holley*, 544 S.W.2d at 371–72.

The trial court was presented with ample evidence that Appellant lacked the parental abilities to meet Z.S.'s physical and emotional needs now and in the future. It is undisputed that Appellant failed to maintain a safe and stable environment for her child, and that she wanted Z.S. to remain with her aunt "[u]ntil housing comes in." Appellant testified that she has been waiting over a year for rental assistance through the federal housing choice voucher program.

Appellant's housing matters aside, perhaps most concerning is her wholesale denial of her mental health and substance abuse issues, and how they affected Z.S. Appellant was indifferent when asked about Z.S.'s positive drug test and told the trial court that he had no developmental delays. Yet, the evidence shows that Z.S. endured several months of therapy to hold his head up, stand, and walk. And, according to Appellant, her positive drug tests were purportedly due to unidentified

7

intruders breaking into her apartment and putting cocaine and methamphetamine in her drinks, and her being exposed to methamphetamine while living in "trap houses."

The trial court's best-interest finding is supported by clear and convincing evidence. The trial court, as the factfinder, was free to believe that Appellant voluntarily used drugs while pregnant with Z.S. and continued to do so thereafter. *See In re J.W.*, 645 S.W.3d at 741. Appellant endangered Z.S. through her drug use. *See In re E.M.*, 494 S.W.3d 209, 222–23 (Tex. App.—Waco 2015, pet. denied) ("A parent's continued drug use demonstrates an inability to provide for the child's emotional and physical needs and to provide a stable environment for the child.") (citing *In re F.A.R.*, No. 11-04-00014-CV, 2005 WL 181719, at *4 (Tex. App.—Eastland Jan. 13, 2005, no pet.) (mem. op.)).

Appellant likewise failed to acknowledge her mental health issues, despite evidence to the contrary. *See In re R.J.*, 579 S.W.3d 97, 118 (Tex. App.—Houston [1st Dist.] 2019, no pet.) ("While mental illness is not a ground for parental termination, the impact of a parent's mental illness on [his or her] ability to parent and the stability of the home are relevant factors in the best interest of the child analysis."); *In re A.T.*, No. 11-22-00252-CV, 2023 WL 2169512, at *5 (Tex. App.—Eastland Feb. 23, 2023, pet. denied) (evidence was legally and factually sufficient to support the trial court's best interest finding considering, among other factors in the record, the appellant's continuing mental health issues, her criminal activity while the case was pending, and the instability of her situation).

The record also revealed that Appellant's parental rights to her five-year-old child were terminated in September of 2022. *See C.H.*, 89 S.W.3d at 28 (a parent's prior history of child neglect has a bearing on the parent's fitness to provide for his or her other children). In this regard, Appellant refused to take accountability for

her actions contributing to that termination order, claiming that she was "misrepresented," and "[t]here [were] a lot of discrepancies."

Most importantly, given the child-centered focus of the best-interest inquiry, we may not discount or minimize Z.S.'s improvement since removal. *See J.W.*, 645 S.W.3d at 746–47. Z.S. became quickly attached to S.J., who took twelve weeks off of work to care for Z.S. as he adjusted to his new home. The Department concluded that S.J. is willing and able to meet Z.S.'s physical, mental, and emotional needs and wishes to adopt him. Even Appellant agreed that Z.S. was safe with S.J.

The evidence showed that Appellant failed to maintain safe and stable housing, did not submit to drug testing on several occasions, tested positive at least twice throughout the pendency of the case, did not provide proof of employment, and refused to engage in mental health services. Not only has Appellant failed to address the Department's initial reasons for intervening—her drug use—she refused to acknowledge it, and it continued throughout the year after service initiation. *See Holley*, 544 S.W.2d at 371–72; *In re L.G.R.*, 498 S.W.3d 195, 204 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (noting a parent's drug use supports finding that termination is in best interest of the child). The trial court may have reasonably inferred that past endangering conduct may occur again in the future if the child is returned to Appellant. *See In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *see also C.H.*, 89 S.W.3d at 27 (holding the same evidence supporting termination under one of the grounds listed in § 161.001(b)(1) may be probative in a best interest determination); *C.J.O.*, 325 S.W.3d at 266 (same). Given Appellant's indifference and dismissal of the Department's concerns, we conclude that the trial court could have reasonably found that terminating her parental rights was in Z.S.'s best interest.

Upon considering the record as it relates to Appellant's actions and inactions, the emotional and physical danger to the child now and in the future, the emotional and physical needs of the child now and in the future, Appellant's parental abilities, her drug use, and the plans for the child by the Department, we hold that the evidence is legally and factually sufficient to support the finding that termination of Appellant's parental rights is in the best interest of the child. *See Holley*, 544 S.W.2d at 371–72; *J.W.*, 645 S.W.3d at 741. Accordingly, we overrule Appellant's sole issue.

*This Court's Ruling*

We affirm the order of the trial court.

JOHN M. BAILEY
CHIEF JUSTICE

December 21, 2023

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.

10